342 S.E.2d 281

**STATE of West Virginia**

v.

**Gerald Wayne HAGER.**

**No. 16689.**

Supreme Court of Appeals of West Virginia.

March 25, 1986.

Richard M. Allen, Boyce A. Griffith, Hamlin, for appellant.

Atty. Gen. Charlie Brown, Asst. Atty. Gen. Mary Rich Maloy, Charleston, for appellee.

BROTHERTON, Justice:

This is an appeal by Gerald Wayne Hager of a judgment of the Circuit Court of Wayne County upholding a jury verdict finding him guilty of first degree murder with a recommendation of mercy. Mr. Hager claims that surprise rebuttal testimony unfairly prejudiced his trial. We agree and reverse.

The appellant, Gerald Hager, and his brother, Terry, had spent most of May 15, 1982, riding around Huntington on their motorcycles, accomplishing various errands. Gerald Hager was accompanied on the trip by his girlfriend, Brenda Joyce Dean. Around 8:00 P.M. the group was returning Ms. Dean to her home in Kenova when an argument broke out between the appellant and Ms. Dean. At the time of the argument they were near Ms. Dean's sister's trailer, and Ms. Dean chose to walk the rest of the way to the trailer. Gerald and Terry Hager stayed for a short while at the scene of the argument and then went to the trailer to look for Ms. Dean so that the appellant could apologize. When they arrived at the trailer, however, they found that Ms. Dean had not arrived, and after a few minutes the appellant and his brother returned to their motorcycles and prepared to leave.

In the meantime, an anonymous call was received by the police dispatcher in Kenova that two men on motorcycles were chasing a woman. The dispatcher sent a unit to investigate the call. Captain George Myers of the Kenova Police Department heard the dispatcher advise that a woman was being chased by two motorcycles. Despite being off duty, Myers responded to the call and drove up just as the motorcycles were driving away from the trailer. Myers wore no uniform or badge and his car was unmarked. Although the car had special lights behind the grill, a police radio, city tags in the rear, and a dry cleaning bag containing a uniform in the back seat, witnesses testified that the car did not give any special notice that Myers was a police officer.

Captain Myers stopped the two motorcyclists and said he had received a complaint, to which Gerald Hager replied, with expletives, that it was none of Myers' business. Captain Myers then said, "It is my business," and opened the car door, attempting to exit the car. Hager shoved the car door back on him, saying, "If you get out of your car I'll hit you in the goddamn head." Angry, Captain Myers reached onto the seat of the car and retrieved a short-barrel, 12-gauge, pump-action shotgun and put the muzzle a few inches away from Hager's nose. Myers then told Hager, "I'm a police officer and you are under arrest. I am going to take you in. If you give me any trouble, I'll blow your head off." At this point Mr. Hager had a change of attitude and became more cooperative. He immediately started to comply with the officer's request to get off the bike, saying, "Let me put the kickstand down." Captain Myers got out of the car and cursed Hager and hit him on the side of the head with the shotgun. The police chief then grabbed Hager and slammed him twice against the side of the police car. Myers then threw Mr. Hager over the trunk of the car and resumed beating on him with the shotgun.

Unbeknownst to Captain Myers, Mr. Hager was carrying a .32 automatic pistol in his belt. At this point in the struggle Mr. Hager pushed himself off the car and grabbed his gun. He shot four times, using all the bullets in the gun. Captain Myers was hit twice in one arm, once in the other, and once in the abdomen. Myers fumbled with the shotgun and then pulled out his pistol, a .38 revolver, and returned fire. Mr. Hager dropped the empty gun and ran to his motorcycle. He did not start the motorcycle because a police car pulled in front of him. The car contained two uniformed officers. When they exited the car they had no idea what had transpired. They had been a short distance away when the shooting had occurred and thought that the gunshots were firecrackers.

Mr. Hager was sitting on his motorcycle when a shot went over his left shoulder. He dove off the motorcycle and onto the ground. In the process of diving on the ground he was shot in the back.[1] After a moment on the ground, Hager got up and raised his hands. The two officers from the patrol car and Captain Myers approached Hager. Captain Myers hit Hager on the forehead with his pistol butt, knocking Hager to the ground. One of the uniformed officers stood over Hager and told him that he was not to move. Captain Myers then shot Hager, who was face down on the ground, again in the back, with his .38. One of the uniformed officers stood over Hager and said, "Oh, no you don't" and fired his gun beside Mr. Hager's head.[2] He repeated this a total of three times. The witnesses, however, could not see what Mr. Hager was doing at this time to provoke the gunfire. It is unclear also, whether he was intending to hit Mr. Hager, but presumably not as he missed three times at point blank range. The police then proceeded to arrest Ms. Dean, who had come running to the scene upon hearing the gunshots, and the appellant's brother, Terry Hager. An ambulance was called for Captain Myers. (None was called for Mr. Hager. The paramedics, however, heard over the radio that two people were shot and sent a back-up unit.) Mr. Hager recovered from his wounds. Unfortunately, Captain Myers died a few minutes after he reached the hospital.

At a jury trial beginning December 6, 1982, Mr. Hager was found guilty of the murder of George Myers, with a recommendation of mercy.

## I.

■ The appellant contends that the trial court erred in not allowing the testimony of

Rex and Randy McClave. The two brothers were prepared to testify about an incident in which Captain Myers had violently and unjustifiably arrested them a week before his death. The testimony was being offered to show the violent nature of Captain Myers in order to buttress Mr. Hager's claim of self-defense. The trial court ruled that the testimony had no probative value and disallowed it.

The rule of evidence in effect at the time of Mr. Hager's trial provided that where the accused relied on a self-defense argument, he was allowed to prove that the deceased had the reputation of dangerous man; but proof would not be permitted of specific acts of violence committed by the deceased upon third persons unless the accused had an opportunity to know of these acts.[3] See, e.g., State v. Peoples, 106 W.Va. 262, 264, 145 S.E. 389, 390 (1928). Because Mr. Hager had no knowledge of Captain Myers' attack upon Rex and Randy McClave, it was not error to exclude their testimony.[4]

## II.

■ A much stronger assignment of error deals with surprise rebuttal testimony. The defendant relied heavily on a self-defense argument. To rebut this the prosecution put on a paramedic who had worked on Mr. Hager, who testified that Mr. Hager told him, "I'm tired of getting screwed with and I fixed it."[5] Despite a prior request by the defendant, the State did not make these statements available to the defense prior to trial.

Rule 16(a)(1)(A) of the West Virginia Rules of Criminal Procedure deals with the

---

1. It is unclear who fired this shot, but presumably it was Captain Myers.

2. The two uniformed police officers denied firing any shots, but independent witnesses at trial insisted that at least one officer did fire shots.

3. The present rule is: Where character or a trait of character of a person is an essential element of a charge, claim or defense, proof may be made of specific instances of his conduct. See W.Va.R.Evid. 405(b).

4. Because the new rules of evidence became effective February 1, 1985, on retrial the new rule should be used and the McClave brothers' testimony allowed.

5. Two other statements by Hager were also presented on rebuttal, but the statements were unimportant to the overall outcome of the trial.

**316**

discovery of a statement of the defendant, providing in part:

> Upon request of a defendant the state shall permit the defendant to inspect and copy or photograph: ... the substance of any oral statement which the state intends to offer in evidence at the trial made by the defendant whether before or after arrest; ...

The section provides that where a request has been timely made the prosecution must provide the defense with the substance of any oral statement or forego its use at trial.

The State argues that it was not required to disclose the defendant's statement in this case because it was not aware of this statement until trial. Certainly the prosecution cannot be expected to know each and every minute detail of its case before trial. Inevitably certain information will surface at trial unexpectedly. Rule 16 recognizes this possibility and in paragraph (c) provides: "If, prior to *or during trial*, a party discovers additional evidence or material previously requested or ordered, which is subject to discovery or inspection under this rule, he shall promptly notify the other party or his attorney or the court of the existence of the additional evidence or material." W.Va.R.Crim.P. 16(c) (emphasis added). The rule expressly sanctions the disclosure of newly discovered evidence at trial. Such disclosure would usually be unnecessary if the information were not to be used at trial. We, therefore, hold that Rule 16 impliedly sanctions the use of newly discovered evidence at trial, so long as the evidence is disclosed to the defense as soon as reasonably possible.

Nevertheless, this Court has consistently held that where a failure to make disclosure hampers the preparation and presentation of the defendant's case, such nondisclosure is fatal to the prosecution's case. *See*, syl. pt. 2, *State v. Grimm*, 165 W.Va. 547, 270 S.E.2d 173 (1980); syllabus, *State v. Ellis*, 176 W.Va. 316, 342 S.E.2d 285 (1986). Our holding in *Grimm* recognized

that adequate preparation by the defense is a prerequisite to a fair trial. We cannot allow a failure by the prosecution, albeit unintentional, to prejudice the defendant's right to a fair trial. We, therefore, hold that where the State is unaware until the time of trial of material evidence which it would be required to disclose under a Rule 16 discovery request the State may use the information at trial provided that: (1) the State discloses the information to the defense as soon as reasonably possible; and (2) the use of the testimony at trial would not unduly prejudice the defendant's preparation for trial.

In this case, the appellant was not advised of the evidence until the rebuttal stage of the trial. The evidence strongly rebutted Mr. Hager's self-defense argument, his key defense. It is quite probable that had defense counsel known of this statement, it would have tried the case differently. We, therefore, hold that Mr. Hager's trial preparation was prejudiced.

For the reasons expressed herein, we reverse the decision of the trial court and remand the case for a new trial.[6]

Reversed and remanded.

---

6. Other assignments of error presented by Mr. Hager we find to be without merit and we dismiss summarily.