518 S.E.2d 60

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Millard MANN, Defendant Below, Appellant.**

No. 25767.

Supreme Court of Appeals of West Virginia.

Submitted May 4, 1999.

Decided June 11, 1999.

Darrell V. McGraw, Jr., Attorney General, Barbara H. Allen, Managing Deputy Attorney General, Charleston, West Virginia, Attorneys for the Appellee.

Charles Stanford West, Williamson, West Virginia, Attorney for the Appellant.

PER CURIAM:

Appellant herein and defendant below, Millard Oscar Mann (hereinafter referred to as "Mr. Mann"), appeals from an October 5, 1998, order entered by the Circuit Court of Mingo County sentencing Mr. Mann to thirty years of imprisonment after a Mingo County jury found him guilty of aggravated robbery. On appeal to this Court, Mr. Mann contends that the State failed to prove beyond a reasonable doubt that there was sufficient evidence to support the verdict; that the trial court erred in the admission of certain photographic evidence; that the trial court erred by admitting evidence of prior bad acts; that the prosecutor made improper remarks to the jury during opening and closing arguments; that the trial court erred by rejecting certain defense jury instructions and that the sentence imposed upon Mr. Mann was disproportionate to the offense. Having reviewed the arguments of the parties, the record presented for consideration on appeal, and the pertinent authorities, we find that there was no error in the trial of this case. As such, we affirm the conviction and sentence imposed.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Mr. Mann lived in Pike County, Kentucky.[1] On the evening of September 4, 1994, Mr. Mann drove a friend, Gordon Gooslin, to the emergency room at Appalachian Regional Hospital (hereinafter referred to as "the ARH"), in Kentucky.[2] Mr. Mann was driving his wife's car, which was a two-door maroon Buick with Kentucky license plate number BVA–820. Mr. Gooslin was taken to the hospital because of a hand injury from a prior automobile accident. Upon arrival at the hospital, Mr. Mann complained of back pains and discomfort caused by ingesting cocaine and drinking beer. As a result of Mr. Mann's own complaints, he was treated before Mr. Gooslin.

Mr. Mann was admitted to the hospital for treatment at 8:15 p.m. Shortly before Mr. Mann was seen by a physician, an attending nurse, Bernadine Steele, observed a gun in Mr. Mann's jacket. Ms. Steele instructed a co-worker to call the police. The police were contacted, and Ms. Steele was instructed to try to detain Mr. Mann until the police arrived. Hospital workers were unable to detain Mr. Mann. After receiving a shot of Tordol for back pain, he was discharged at 8:40 p.m. Hospital workers testified that Mr. Mann was wearing a dark t-shirt with a skull or motorcycle design on it, blue jeans and a dark bandana.

Ms. Steele testified that after Mr. Mann was discharged, she followed him outside the hospital. It appeared to her that Mr. Mann was not leaving the hospital area so she went back inside. At trial, Ms. Steele testified that she again went outside the hospital at 9:00 p.m. for a cigarette break and noticed that Mr. Mann and the car driven by him were gone.[3] Ms. Steele testified that she did not see Mr. Mann again until sometime after 10:00 p.m.

On the same evening, at 9:30 p.m., a man walked up to the drive-thru window of a store in Mingo County, West Virginia, called the Cold Spot, and demanded the store clerk

---

1. Mr. Mann is married and has one child.

2. Mr. Carl Smith also accompanied Mr. Mann to the hospital. Mr. Smith died during the pendency of this case.

3. Trial testimony revealed that Mr. Gooslin was admitted for treatment at 9:20 p.m. and was discharged at 10:50 p.m.

hand over all of the money in the store.[4] The robber had a gun and was reported as wearing a dark t-shirt with a skull or motorcycle design on it, blue jeans and a dark bandana on his face.[5] The store clerk handed over the money, which was approximately $1,300.00. The robber then fled the scene and went to a nearby parked car. The robber got into the car and sped away. An eyewitness to the robbery, John Dotson, observed the robber get into a maroon vehicle that had the license plate number BVA–820.[6]

As a defense, Mr. Mann later explained his whereabouts during the time of the robbery by testifying that he became sick while he was at the hospital waiting for Mr. Gooslin to be treated. Mr. Mann further testified that he went into the hospital bathroom for about a half hour, where he began throwing up. Further, Mr. Mann stated that he called his wife and told her to come pick him up because he was too sick to drive. Mrs. Mann came to the hospital around the time Mr. Gooslin was discharged. The testimony at trial indicated that Mr. Mann got into a pickup truck his wife was driving, and they rode off together. Mr. Gooslin and Mr. Smith left in the vehicle Mr. Mann had driven to the hospital.

The police identified the license plate number of the car driven by the robber as the license plate number of a car registered to Mrs. Mann. Eventually, Mr. Mann was arrested and indicted for aggravated robbery of the Cold Spot. At trial, Mr. Mann attempted to show that he did not commit the crime, because he was not the same size as the man described by witnesses.[7] The jury rejected Mr. Mann's theory of the case and convicted him of aggravated robbery. The trial court sentenced Mr. Mann to thirty years' imprisonment. This appeal followed.

## II.

## STANDARD OF REVIEW

Due to the numerous assignments of error asserted by Mr. Mann, we will articulate the applicable standards of review in connection with the particular assignments to which they relate.

## III.

## DISCUSSION

### A. Insufficiency of Evidence to Support the Verdict

The first assignment of error raised by Mr. Mann is that the evidence was insufficient to support the verdict finding him guilty of aggravated robbery. This Court articulated the standard of review for sufficiency of the evidence in *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). We held in Syllabus point 1 of *Guthrie* that:

The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

*Id.*

We further elaborated in Syllabus point 3 of *Guthrie*, in part, that:

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable

---

4. The store provided only drive-thru service at night.

5. The initial report of the robber's size was a height of 5'11" and a weight of 240 lbs.

6. The car was initially reported to be a four-door Oldsmobile.

7. Mr. Mann's height was 5'7". His weight was under 200 lbs.

doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

*Id.*

Mr. Mann's conviction was based upon circumstantial evidence.[8] This Court has previously ruled that we may accept any adequate evidence, including circumstantial evidence, as support for a conviction.

Circumstantial evidence ... is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some case[s] point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more.

*Guthrie,* 194 W.Va. at 668, 461 S.E.2d at 174 (quoting *Holland v. United States,* 348 U.S. 121, 139–40, 75 S.Ct. 127, 137–38, 99 L.Ed. 150, 166 (1954)).

Although the issue of circumstantial evidence is significant in this case, ultimately the most critical factor is witness credibility. The State presented uncontradicted evidence that a maroon-looking car bearing the license plate number BVA–820 was used as the getaway vehicle in the robbery. Although the evidence was conflicting as to whether the car was a Buick or an Oldsmobile, or had two-doors or four-doors, there was uncontradicted testimony by eyewitness John Dotson that the getaway vehicle was maroon in color and had the license plate number BVA–820. Uncontradicted evidence was also introduced to establish that the car driven to the hospital by Mr. Mann, and owned by Mrs. Mann, was maroon and had the license plate number BVA–820.

The State presented evidence through Nurse Steele that, at 9:00 p.m., Mr. Mann and the car he drove to the hospital had disappeared. Nurse Steele testified that she did not see Mr. Mann again until after 10:00 p.m. The robbery occurred at 9:30 p.m.[9] During the trial, Mr. Mann accounted for his time between the hours of 9:00 p.m. and 10:00 p.m. as time spent in the hospital bathroom throwing up and calling his wife to come pick him up. No witness came forward to corroborate Mr. Mann's whereabouts at the hospital between 9:00 p.m. and 10:00 p.m. Nurse Steele also testified that she saw a gun in a jacket worn by Mr. Mann. The robbery was committed by a person using a gun. Mr. Mann however, has denied having a handgun.

The State presented additional testimony that Mr. Mann wore a dark t-shirt with a skull or motorcycle design on it, blue jeans and a dark bandana when he entered the hospital. The State also presented evidence that the person who robbed the store wore a dark t-shirt with a skull or motorcycle design on it, blue jeans and a dark bandana covering his face. In his brief, Mr. Mann apparently seeks to concede on appeal that he wore a bandana on the night of the robbery. His brief states, "[i]t is uncontroverted that Appellant was wearing a bandana, tee shirt, and jeans." This statement of concession in Mr. Mann's brief actually mischaracterizes the trial evidence. At the trial, Mr. Mann denied wearing a bandana on the night of the rob-

**8.** Mr. Mann's brief cited Syllabus point 2 of *State v. Phillips,* 176 W.Va. 244, 342 S.E.2d 210 (1986), wherein we held:

Circumstantial evidence will not support a guilty verdict, unless the fact of guilt is proved to the exclusion of every reasonable hypothesis of innocence; and circumstances which create only a suspicion of guilt but do not prove the actual commission of the crime charged, are not sufficient to sustain a conviction.

Had Mr. Mann consulted our more recent holding in Syllabus point 3 of *Guthrie,* 194 W.Va. 657, 461 S.E.2d 163, he would have discovered that *Guthrie* overruled all of our prior decisions which required guilt be proven "to the exclusion of every reasonable hypothesis of innocence."

**9.** Trial testimony does not appear to actually report the distance between or the time it takes to travel from the ARH in Kentucky to the Cold Spot in Mingo County, West Virginia.

bery.[10] In fact, during direct examination of Mr. Mann, he was asked if he wore a cap on the night of the robbery, and he said no. When the State questioned Mr. Gooslin as to whether he recalled if Mr. Mann wore a bandana on the night of the robbery, Mr. Gooslin said, "No. He had on a cap." The jury apparently believed that Mr. Mann and Mr. Gooslin were not telling the truth regarding the bandana. As indicated above, Mr. Mann's brief now seeks to retract his trial testimony and to give the appearance that he in fact did not contest the issue of wearing a bandana.

 In this appeal, Mr. Mann seeks to draw attention to the discrepancy between the height and weight descriptions given of the robber and his actual height and weight. In view of the fact that the robbery occurred at night and the additional evidence in this case, we are unpersuaded that the jury was wrong in discounting the height and weight discrepancy. This Court has consistently held that if " 'the evidence is wholly circumstantial, but as to time, place, motive, means and conduct, it concurs in pointing to the accused as the perpetrator of the crime, he may properly be convicted.' " Syl. pt. 1, *State v. Bailey*, 151 W.Va. 796, 155 S.E.2d 850 (1967) (quoting *State v. Beale*, 104 W.Va. 617, 141 S.E. 7 (1928)).[11] Moreover, "[a] verdict of guilty in a criminal case consistent with a reasonable interpretation of the evidence and circumstances proved will not be disturbed by this Court." Syl. pt. 6, *Bailey*, 151 W.Va. 796, 155 S.E.2d 850. As such, we conclude the evidence was sufficient to support the jury verdict.

### B. Admission of Photographic Evidence

 The next assignment of error asserted by Mr. Mann is that the trial court committed error by admitting into evidence photographs depicting the license plate number of his wife's car. We follow the general rule that "[t]he action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appel-

late court unless it appears that such action amounts to an abuse of discretion." Syl. pt. 3, *State v. Louk*, 171 W.Va. 639, 301 S.E.2d 596 (1983). *See* Syl. pt. 2, *State v. Peyatt*, 173 W.Va. 317, 315 S.E.2d 574 (1983) ("Rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion."(internal quotations and citation omitted)).

 The basis of Mr. Mann's objection to the evidence is that the State failed to timely produce the photographs during discovery. The photographs were not produced until the day of the trial. The State argues that it was unaware of the photographs until they were presented by the police on the day of the trial. In the single syllabus point of *State v. Hager*, 176 W.Va. 313, 342 S.E.2d 281 (1986), *overruled on other grounds by*, *State v. Woodson*, 181 W.Va. 325, 382 S.E.2d 519 (1989), this Court held that:

> Where the State is unaware until the time of trial of material evidence which it would be required to disclose under a Rule 16 discovery request, the State may use the evidence at trial provided that: (1) the State discloses the information to the defense as soon as reasonably possible; and (2) the use of the evidence at trial would not unduly prejudice the defendant's preparation for trial.

 A review of the record in this case demonstrates that the trial court applied the *Hager* factors in exercising its discretion to admit the photographs. The State explained to the trial court that as soon as the police turned over the photographs, they were immediately given to defense counsel. More importantly here, however, is the trial court's finding that the late disclosure of the photographs would not prejudice the defense's trial preparation. We held in Syllabus point 2 of *State v. Grimm*, 165 W.Va. 547, 270 S.E.2d 173 (1980), in part, that late disclosure of discoverable evidence "is prejudicial where the defense is surprised on a material issue and where the failure to make the disclosure

---

10. During direct examination of Mr. Mann, the following exchange occurred.
 Q. Did you wear a bandana that night?
 A. No, sir.

11. The issue of motive is discussed in Section III. C., *infra*.

hampers the preparation and presentation of the defendant's case." The trial court found that the evidence represented by the photographs merely illustrated what the jury had already been told through testimonial evidence. That is, the photographs displayed the license plate number of Mrs. Mann's car. The jury had previously been informed by witnesses that the license plate number on the crime getaway car was the same license plate number as on Mrs. Mann's car. At most, the photographs may have been cumulative evidence. The late disclosure was in no manner prejudicial to Mr. Mann's case. Mr. Mann knew prior to trial that the State was going to introduce evidence, albeit testimonial in nature, that the license plate number on the crime getaway car matched the license plate number on the car he drove to the hospital. We perceive no reasonable prejudice to Mr. Mann's defense because of the redundant nature of the photographs.

### C. Admission of Evidence of Prior Bad Acts

The third assignment of error by Mr. Mann is that the trial court improperly allowed the State to introduce evidence of his prior drug problem. This assignment of error, as raised and briefed by Mr. Mann, inaccurately reflects what actually occurred at trial. The sequence of events at trial pertaining to the issue of Mr. Mann's drug addiction occurred as follows.

First, at a pretrial hearing on the morning of the trial, the State represented that it was going to introduce evidence that Mr. Mann was admitted to the hospital as a result of problems associated with his ingestion of cocaine. Additionally, in order to establish a motive for the robbery, the State argued that it was going to present evidence that Mr. Mann was addicted to cocaine and needed money to buy drugs to support his addiction. Defense counsel objected to the admission of both types of evidence. The trial court ruled that the issue of why Mr. Mann was admitted to the hospital was relevant and that evidence on that issue could be presented. On the issue of Mr. Mann being addicted to cocaine, the trial court indicated that if the State was going to introduce evidence on the

matter, the probative value versus the prejudicial impact balancing test of Rule 403 of the West Virginia Rules of Evidence would first have to be made. The Rule 403 analysis was not performed because the State admitted that it did not have any witnesses that would testify regarding Mr. Mann's alleged addiction to cocaine. The hearing on this issue concluded with the following exchange:

> Defense Counsel: ... We would ask that the words "cocaine addiction" not be used, because there is no evidence of that and the prosecutor has indicated he is not going to proffer that.
>
> The State: I don't intend to use that.
>
> The Court: Don't use words you can't support by evidence.

**1. Evidence of why Mr. Mann was admitted to the hospital.** As indicated previously, the trial court permitted the State to introduce evidence that Mr. Mann was admitted to the hospital after complaining of problems associated with his ingestion of cocaine. The trial court found that such evidence was relevant. This Court has held that "Rule 402 and Rule 403 of the West Virginia Rules of Evidence direct the trial judge to admit relevant evidence, but to exclude evidence whose probative value is substantially outweighed by the danger of unfair prejudice to the defendant." Syl. pt. 10, *State v. George W.H.*, 190 W.Va. 558, 439 S.E.2d 423 (1993). Although the trial court did not perform the Rule 403 analysis on the issue of evidence regarding why Mr. Mann was admitted to the hospital, we do not find such omission to be reversible error, if it constitutes error at all.

In order for the State to establish a timeline, or opportunity in which Mr. Mann could have committed the robbery, it was necessary to introduce evidence of when and why he was admitted to the hospital, as well as evidence concerning the type of treatment provided and when he was released. The jury had a right to know that Mr. Mann was not admitted to the hospital for surgery or a broken limb. In other words, it was necessary for the jury to know that Mr. Mann did not receive treatment for some type of injury that would have precluded him from being physically able to commit the robbery. This

was a highly relevant issue that the jury should not be required to speculate about during deliberation. Therefore, the trial court did not abuse its discretion by admitting evidence as to why Mr. Mann was admitted to the hospital.

**2. Evidence of Mr. Mann's cocaine addiction.** A thorough review of the record in this case demonstrates that the State did not mention during its opening statement that evidence of Mr. Mann's cocaine addiction would be introduced. During its case-in-chief, the State did not elicit from any of its witnesses evidence that Mr. Mann had a cocaine addiction. However, during Mr. Mann's case-in-chief, the State cross-examined him about his drug use. In reviewing the record we find that Mr. Mann opened the door to such cross-examination. It has long been the rule in this State that "[a]n appellant or plaintiff in error will not be permitted to complain of error in the admission of evidence which he offered or elicited[.]" Syl. pt. 2, in part, *State v. Bowman*, 155 W.Va. 562, 184 S.E.2d 314 (1971). Where inadmissible evidence is introduced as a result of the rigorous examination of the complaining party, the error is deemed invited error. *State v. Hanson*, 181 W.Va. 353, 363, 382 S.E.2d 547, 557 (1989). Addressing the issue of invited error in *State v. Crabtree*, 198 W.Va. 620, 627, 482 S.E.2d 605, 612 (1996), we made the following observations:

"Invited error" is a cardinal rule of appellate review applied to a wide range of conduct. It is a branch of the doctrine of waiver which prevents a party from inducing an inappropriate or erroneous response and then later seeking to profit from that error. The idea of invited error is not to make the evidence admissible but to protect principles underlying notions of judicial economy and integrity by allocating appropriate responsibility for the inducement of error. Having induced an error, a party in a normal case may not at a later stage of the trial use the error to set aside its immediate and adverse consequences.

The record in this case demonstrates that, during his case-in-chief, Mr. Mann testified on direct examination regarding his addiction.[12] Immediately after Mr. Mann's direct examination, the State cross-examined Mr. Mann about his cocaine addiction and lack of income to support his addiction.[13] Through-

12. Q. [Mr. Mann], was your appearance, apart from the weight you've put on recently, any different that night than it is now?
A. No, except I probably looked tore up, which is what I was.
Q. You no longer use drugs, do you?
A. No.
Q. Did your wife know you were using drugs?
A. No. I don't let her know my business.
Q. You are embarrassed about it?
A. No. I wasn't embarrassed.
Q. You were embarrassed about your drug use?
A. No. Am I embarrassed about it? Oh, sure! You know, it's an addiction. Cocaine is hard to get off of.
Q. Have you ever robbed anyone to get money for cocaine?
A. No, sir.
Q. Did you ever burglarize any homes to get money for cocaine?
A. No, sir.
Q. Have you ever stolen anything in your life?
A. No, sir.
Q. Have you ever been charged with stealing anything?
A. No, sir. I draw social security, have my own money.

13. Q. Mr. Mann, you had a cocaine problem in 1994, didn't you?

A. Yes, sir.
Q. It was a severe problem, wasn't it?
A. Yes, sir.
Q. How severe was it?
A. I don't know. I just used it.
Q. How often did you use it? Once a day, twice a day?
A. Whenever I had a craving for it.
Q. Can you be more specific? Approximately how much did you use?
A. When I had the money I'd get it.
Q. How did you get the money?
A. I draw social security.
Q. So, you spent your social security money on cocaine?
A. A lot of it, sure did.
Q. How much social security do you get per month?
A. $900.00 a month
Q. You get $900.00 social security a month?
A. Yes.
. . . .
Q. Mr. Mann, exactly how much money per month did you spend on cocaine?
A. About $200.00, sometimes maybe a little more.
. . . .
Q. What I'm getting to, Mr. Mann, how did you support your family on $900.00 a month with a severe cocaine addiction?

out the State's cross-examination of Mr. Mann about his cocaine addiction, defense counsel made no objection involving the substance of the questioning.[14] No objection could be made. Mr. Mann invited cross-examination into his cocaine addiction, as he testified on direct examination about the issue.

Now, Mr. Mann contends that the cross-examination was improper evidence of prior bad acts. We concede that the cross-examination involved prior bad acts. However, Mr. Mann told the jury during direct examination that he had a prior cocaine addiction. He further led the jury to believe that he had sufficient personal income through Social Security to support that addiction. The State had a right to show the jury that Mr. Mann's income was not sufficient to support his addiction. Mr. Mann's counsel opened the door to the State's cross-examination by questioning him on direct examination about his cocaine addiction and the problems associated therewith. Consequently, he cannot now complain of error in the State's cross-examination of those matters he brought out on direct examination. *State v. McWilliams*, 177 W.Va. 369, 375, 352 S.E.2d 120, 126 (1986). "'A judgment will not be reversed for any error in the record introduced by or invited by the party seeking reversal.'" Syl. pt. 4, *State v. Johnson*, 197 W.Va. 575, 476 S.E.2d 522 (1996) (quoting Syl. pt. 21, *State v. Riley*, 151 W.Va. 364, 151 S.E.2d 308 (1966)).

### D. Prosecutorial Misconduct

The fourth assignment of error made by Mr. Mann is that the prosecutor made improper remarks to the jury during his opening statement and closing argument. For the reasons set forth below, we find no merit to this assignment of error.

**1. Opening statement.** Mr. Mann contends that the State informed the jury that evidence would be presented to show that he had a gun on the night of the

robbery. Mr. Mann argues that such a statement was improper because "[n]o evidence was submitted in support of this statement." We held in Syllabus point 1 of *State v. Dunn*, 162 W.Va. 63, 246 S.E.2d 245 (1978), that "[a] judgment of conviction will not be reversed because of improper remarks made by a prosecuting attorney in his opening statement to a jury which do not clearly prejudice the accused or result in manifest injustice." We find no prejudice or manifest injustice arising from the State's remarks. In fact, the record in this case clearly shows that the State introduced evidence through Nurse Steele indicating that she saw a gun in Mr. Mann's jacket while he was being treated at the hospital.

**2. Closing argument.** Mr. Mann next contends that the state made prejudicial remarks to the jury during closing argument. The rule in this state has long been that "[i]f either the prosecutor or defense counsel believes the other has made improper remarks to the jury, a timely objection should be made coupled with a request to the court to instruct the jury to disregard the remarks." Syl. pt. 5, *State v. Grubbs*, 178 W.Va. 811, 364 S.E.2d 824 (1987). *See State v. Lewis*, 133 W.Va. 584, 57 S.E.2d 513 (1949); *State v. Files*, 125 W.Va. 243, 24 S.E.2d 233 (1942); *State v. Fisher*, 123 W.Va. 745, 18 S.E.2d 649 (1941). A review of the record shows that defense counsel made no objections to any remarks by the State during its closing argument. This Court has long held that "[f]ailure to make timely and proper objection to remarks of counsel made in the presence of the jury, during the trial of a case, constitutes a ... [forfeiture] of the right to raise the question thereafter in the trial court or in the appellate court." Syl. pt. 1, in part, *State v. Garrett*, 195 W.Va. 630, 466 S.E.2d 481 (1995). *See* Syl. pt. 5, *Tennant v. Marion Health Care Found., Inc.*, 194 W.Va. 97, 459 S.E.2d 374 (1995); Syl. pt. 1, *Daniel B. by Richard B. v. Ackerman*, 190 W.Va. 1, 435 S.E.2d 1 (1993); Syl. pt. 5, *State v. Davis*, 180 W.Va. 357, 376 S.E.2d 563

A. It was tough. I was ashamed of myself.

**14.** During this line of questioning, defense counsel made one objection relating to a compound question. The objection was sustained. A sec-

ond objection was made, which was overruled, that required speculation on the part of Mr. Mann.

(1988); Syl. pt. 7, *State v. Cirullo*, 142 W.Va. 56, 93 S.E.2d 526 (1956); Syl. pt. 6, *Yuncke v. Welker*, 128 W.Va. 299, 36 S.E.2d 410 (1945).[15] In view of our precedent, Mr. Mann cannot argue for the first time on appeal that the prosecutor made improper remarks during closing argument.

### E. Rejection of Defense Jury Instructions

▇▇▇▇▇▇ The fifth assignment of error by Mr. Mann is that the trial court improperly rejected his proffered jury instructions numbered 4, 6 and 10. We have held that "[w]hether facts are sufficient to justify the delivery of a particular instruction is reviewed by this Court under an abuse of discretion standard." Syl. pt. 12, in part, *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994). This Court stated in Syllabus point 11 of *Derr* that

> [a] trial court's refusal to give a requested instruction is reversible error only if: (1) the instruction is a correct statement of the law; (2) it is not substantially covered in the charge actually given to the jury; and (3) it concerns an important point in the trial so that the failure to give it seriously impairs a defendant's ability to effectively present a given defense.[16]

*Id.*

For the reasons explained below, we find this fifth assignment of error is without merit.

**1. Instruction Number 4.** Mr. Mann offered an instruction on the burden of proof which the trial court rejected because the issue was adequately covered in the court's charge to the jury. Other than to point out

the trial court's rejection, Mr. Mann's brief does not indicate any prejudice from such rejection. We find no meaningful difference in the instruction given by the trial court and Mr. Mann's proffered instruction.

**2. Instruction Number 6.** Mr. Mann tendered an instruction on the weight to be given the evidence. That instruction was rejected by the trial court as being properly covered in the charge to the jury. Mr. Mann's brief fails to illustrate how his proffered Instruction Number 6 presented something substantively correct that was not already covered by the charge to the jury.

**3. Instruction Number 10.** Mr. Mann tendered two instructions, Numbers. 10 and 12, to the trial court regarding the evidentiary identification of him. The trial court rejected Instruction Number 10 because Instruction Number 12 adequately covered the issue. A review of both instructions reveal that the trial court did not abuse its discretion in rejecting Instruction Number 10, since the issue embodied in it was already sufficiently covered in Instruction Number 12.

### F. Disproportionate Sentence

▇▇▇▇▇▇ The final assignment of error by Mr. Mann is that the sentence imposed was disproportionate to the crime committed. In Syllabus point 8 of *State v. Vance*, 164 W.Va. 216, 262 S.E.2d 423 (1980), we held that "Article III, Section 5 of the West Virginia Constitution . . . has an express statement of the proportionality principle: 'Penalties shall be proportioned to the character and degree of the offence.' " This Court has adopted two tests to determine whether a sentence is

---

**15.** We have reviewed the remarks of the prosecutor and find that this issue does not warrant application of the plain error doctrine. The plain error doctrine of W.Va.R.Crim.P. 52(b), whereby the court may take notice of plain errors or defects affecting substantial rights although they were not brought to the attention of the court, is to be used sparingly and only in those circumstances in which a miscarriage of justice would otherwise result. Syl. pt. 4, *State v. Grubbs*, 178 W.Va. 811, 364 S.E.2d 824 (1987)(internal quotations and citation omitted).

**16.** *See also* Syl. pt. 4, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995) ("A trial court's instructions to the jury must be a correct state-

ment of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not misle[d] by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.").

so disproportionate to a crime that it violates our Constitution. Under the first test, which is subjective, we determine whether the sentence for the particular crime shocks the conscience of the Court and society. If we find under the first test that a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry into proportionality need not proceed further. *State v. Cooper*, 172 W.Va. 266, 304 S.E.2d 851 (1983). However, when it cannot be said that a particular sentence shocks the conscience, we must proceed to the second test, which is an objective test. The second test is set out in Syllabus point 5 of *Wanstreet v. Bordenkircher*, 166 W.Va. 523, 276 S.E.2d 205 (1981):

> In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

In the instant proceeding Mr. Mann was convicted of aggravated robbery. The trial court sentenced him to thirty years' imprisonment.[17] By statute, Mr. Mann could have been sentenced to life imprisonment.[18] Under the subjective test for proportionality of a sentence, we cannot say that a sentence of thirty years' imprisonment for aggravated robbery shocks the conscience of the Court and society. The sentence imposed was within the statutory limits. In fact, we have held as a general matter that "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syl. pt. 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982).

Under the second test for sentence proportionality, we must perform a four part analysis. As will be seen, the sentence in this case of thirty years for aggravated robbery is also valid under the second test.

**1. The nature of the offense.** The crime for which Mr. Mann was convicted is a felony. We observed in *State v. Glover*, 177 W.Va. 650, 659, 355 S.E.2d 631, 640 (1987), that "[r]obbery has always been regarded as a crime of the gravest character." The crime in this case involved the use of a deadly weapon. The jury found that Mr. Mann pointed the weapon at an innocent store clerk and verbally threatened to blow out the clerk's brains. The store clerk was alone. The hour was late. Mr. Mann wore a bandana over his face to cover his identity. Obviously, the store clerk was traumatized by the situation. In fact, the record indicates the store clerk changed jobs as a result of the robbery. The trial court indicated best, during the sentencing hearing, the gravity of aggravated robbery: "Other than a murder, there is not much anything I can think of more serious than having a gun stuck in your face and being robbed."

**2. The legislative purpose behind the punishment.** Under the State's aggravated robbery statute, when imprisonment is ordered, it is mandatory that the trial court sentence the offender to not less than ten years' imprisonment. The statute purposely does not impose a maximum sentence for aggravated robbery. This Court has recognized that the Legislature, by not expressly fixing a maximum term, has impliedly authorized life imprisonment as the maximum penalty for aggravated robbery. *State v. Turley*, 177 W.Va. 69, 350 S.E.2d 696 (1986). The Legislature has chosen not to deprive trial courts of discretion to determine the appropriate determinate term for life or for a specific number of years above the statutory minimum as the sentence for aggravated robbery. This legislatively created statutory minimum/discretionary maximum

---

**17.** During the sentencing hearing the State requested Mr. Mann be sentenced to forty-five years' imprisonment.

**18.** Aggravated robbery is set forth in W. Va.Code § 61–2–12 (1961)(Repl.Vol.1997), which provides in relevant part:

> If any person commit ... robbery by ... presenting of firearms, or other deadly weapon or instrumentality whatsoever, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than ten years.

sentencing scheme for aggravated robbery serves two purposes.[19] First, it gives recognition to the seriousness of the offense by imposing a minimum sentence below which a trial court may not go. Second, the open-ended maximum sentencing discretion allows trial courts to consider the weight of aggravating and mitigating factors in each particular case. *See generally State ex rel. Faircloth v. Catlett,* 165 W.Va. 179, 267 S.E.2d 736 (1980). The legislature has broad power in prescribing punishments for criminal offenses, limited only by the constitutional prohibition against cruel and unusual punishments or disproportionate sentences. *State v. Glover,* 177 W.Va. 650, 355 S.E.2d 631 (1987). We previously have ruled that the fact that the aggravated robbery statute is an open-ended sentencing statute, does not render unconstitutional on its face as authorizing cruel and unusual punishment. *State v. Houston,* 166 W.Va. 202, 273 S.E.2d 375 (1980).

**3. A comparison of the punishment with other jurisdictions.** This Court has previously recognized that other jurisdictions permit severe penalties for the crime of aggravated robbery. In *State v. Glover,* 177 W.Va. at 659, 355 S.E.2d at 638, we cited the following cases from other jurisdictions: *State v. Boag,* 104 Ariz. 362, 453 P.2d 508 (1969) (en banc) (seventy-five to ninety-nine years for robbery is not cruel and unusual punishment); *People v. Isitt,* 55 Cal.App.3d 23, 127 Cal.Rptr. 279 (1976) (life sentence without possibility of parole for kidnaping for robbery is not disproportionate); *State v. Victorian,* 332 So.2d 220 (La.1976) (forty-five years without possibility of parole is not cruel, excessive or unusual punishment for armed robbery, under statute authorizing between five and ninety-nine years without possibility of parole); *Garrett v. State,* 486 S.W.2d 272 (Mo.1972) (ninety-nine years for first degree robbery, with a prior felony, is not excessive punishment). *See also People v. Murph,* 185 Mich.App. 476, 463 N.W.2d 156 (1990) (affirming two forty-sixty sentences for armed robbery). In the instant proceeding, Mr. Mann's sentence to thirty years' imprisonment for aggravated robbery

is consistent with punishments imposed by other jurisdictions for similar conduct.

**4. A comparison of punishment with other offenses within the State.** This Court has evaluated several aggravated robbery sentences under the proportionality doctrine. Mr. Mann points to our decision in *State v. Cooper,* 172 W.Va. 266, 304 S.E.2d 851 (1983), for support of his argument that the sentence imposed upon him is excessive. In *Cooper* we set aside a forty year sentence imposed on the defendant. Several factors in *Cooper* warranted our finding that the sentence in that case excessive. In *Cooper* the defendant was only nine-teen years old, the crime committed was his first offense, and the probation officer recommended a minimum sentence. *Id.,* 172 W.Va. at 271, 304 S.E.2d at 855. Additionally, in *State v. Buck,* 170 W.Va. 428, 294 S.E.2d 281 (1982), we set aside a seventy-five year sentence for aggravated robbery. We found the sentence in *Buck* excessive in view of the offense having been the first crime of violence committed by the defendant and based upon the defendant's expression of remorse and offer to pay restitution to the victim.

The decisions in *Cooper* and *Buck* are distinguishable from Mr. Mann's case. Mr. Mann has refused to express any remorse for his crime. He has a prior drug related felony conviction and a conviction for assault (the original charge was attempted murder). The State recommended Mr. Mann be given a sentence of forty-five years. The presentence report on Mr. Mann was negative. The victim in this case was emotionally distraught and forced to change jobs. At the time of the offense, Mr. Mann was in his late thirty's. The instant case is similar to our decision in *State v. Glover,* 177 W.Va. 650, 355 S.E.2d 631 (1987). In *Glover* we refused to set aside a sentence of 75 years imprisonment for aggravated robbery. We found in *Glover* that the defendant had prior convictions, was not remorseful and the presentence report was negative. Furthermore, Mr. Mann's case is similar to our decision in *State v. Spence,* 182 W.Va. 472, 388 S.E.2d

**19.** We have held that an indeterminate sentence for aggravated robbery is invalid. *State ex rel.*

*Faircloth v. Catlett,* 165 W.Va. 179, 267 S.E.2d 736 (1980).

498 (1989). In *Spence* we upheld a sixty year sentence for aggravated robbery where the defendant used a large kitchen-type chopping knife. We noted in *Spence* that the defendant had prior convictions. We were also concerned about the permanent emotional damage to the young victim in that case. *See also State v. Salmons,* 203 W.Va. 561, 509 S.E.2d 842 (1998) (affirming thirty year sentence for aggravated robbery); *State v. Sugg,* 193 W.Va. 388, 456 S.E.2d 469 (1995) (affirming forty-five year sentence for aggravated robbery); *State v. Layton,* 189 W.Va. 470, 432 S.E.2d 740 (1993) (affirming forty-seven year sentence for aggravated robbery); *State v. England,* 180 W.Va. 342, 376 S.E.2d 548 (1988) (affirming life sentence for aggravated robbery); *State v. Sheppard,* 172 W.Va. 656, 310 S.E.2d 173 (1983) (affirming thirty year sentence for aggravated robbery). Based upon the foregoing analysis, we conclude that the sentence imposed was not disproportionate to the crime committed.

## IV.

## CONCLUSION

For the reasons explained in the body of this opinion, we find that the Circuit Court of Mingo County properly tried and sentenced Mr. Mann. Consequently, the conviction and sentence entered on October 5, 1998, is affirmed.

Affirmed.

Judge KAUFMAN, sitting by temporary assignment.

Justice MAYNARD, deeming himself disqualified, did not participate in the decision of this case.