# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **J.T.**

**No. 16-0999** (Summers County 15-JA-25)

**FILED**

**June 19, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father C.T., by counsel F. John Oshoway, appeals the Circuit Court of Summers County's August 19, 2016, order terminating his parental rights to J.T.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Martha J. Fleshman, filed a response on behalf of the child in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court (1) failed to make appropriate findings that there was no reasonable likelihood that he could substantially correct the conditions of abuse and neglect; (2) failed to give him an adequate opportunity to make corrections; (3) erred by placing him on a pre-adjudicatory improvement period; (4) erred in terminating his post-adjudicatory improvement period; and (5) failed to make explicit findings of fact and conclusions of law in the dispositional order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2015, the DHHR filed an abuse and neglect petition against the mother and another man who was initially named as the child's father.[2] The petition alleged that the mother abused drugs during her pregnancy. According to the petition, petitioner was present at the hospital when the child was born. The petition also alleged that there were aggravated

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]The other man, J.M., was dismissed from the proceedings when it was determined that he was not J.T.'s biological father.

circumstances because the mother's parental rights to another child were previously involuntarily terminated. On December 17, 2015, the DHHR filed an amended petition naming petitioner as the biological father of the child.

In January of 2016, the circuit court held a preliminary hearing wherein petitioner requested a pre-adjudicatory improvement period and the circuit court granted his motion and he was advised of the terms and conditions of the improvement period. According to the record, there were no allegations of abuse or neglect against petitioner at the time he requested the pre-adjudicatory improvement period.[3] Petitioner was ordered to submit to a psychological evaluation. The circuit court noted that the terms and conditions of petitioner's improvement period also indicated that failure to comply with the conditions contained in the improvement period and treatment plan "may result in immediate [r]evocation of the [i]mprovement [p]eriod and subsequently to possible [t]ermination of [p]arental [r]ights." A multidisciplinary team ("MDT") meeting was convened on the same day. Also in January of 2016, the circuit court held a hearing wherein the mother voluntarily relinquished her parental rights to the child and the circuit court scheduled a review hearing regarding petitioner's improvement period.

In February of 2016, the DHHR filed a second amended petition alleging that petitioner was "aggressive and confrontational" with DHHR personnel, lacked adequate parenting skills, and failed to adequately supervise his older child.[4] Also in February of 2016, the circuit court held a preliminary hearing wherein a DHHR worker and petitioner testified. According to the DHHR worker, the DHHR had serious concerns about petitioner's ability to parent J.T. The worker testified that petitioner did not know how to properly feed or bathe the child, that petitioner told a DHHR worker that he wanted custody of the child "immediately" and that he "was not about to participate in a psychological evaluation." The worker further testified that petitioner did not understand that "it would be emotionally better for [J.T.] to at least be able to recognize him before going to his home." The worker noted that petitioner had not participated in the court-ordered psychological evaluation. Petitioner testified that he wanted more visits with J.T. Based on the evidence presented, the circuit court found "probable cause to support the petition" based on petitioner's aggressive behavior toward the DHHR staff and his inability to properly parent. Subsequently, petitioner completed a psychological evaluation.

In March of 2016, the circuit court held an adjudicatory hearing wherein petitioner stipulated to the allegations against him in the second amended petition and requested a post-

---

[3]Petitioner argues on appeal that the circuit court erred by placing him on a pre-adjudicatory improvement period. It is clear from the record, however, that petitioner requested the pre-adjudicatory improvement period even though there were no allegations of abuse or neglect against him at that time.

[4]According to the record, the DHHR included in its second amended petition an incident where petitioner's older child fell down a flight of stairs at a law office because petitioner was not adequately supervising her. The older child is not the subject of this appeal.

adjudicatory improvement period. The circuit court found that J.T. was an abused and neglected child and granted petitioner's request for a post-adjudicatory improvement period. In June of 2016, based on recommendations from the DHHR and the guardian at petitioner's review hearing, the circuit court scheduled a dispositional hearing.

In July and August of 2016, the circuit court held a dispositional hearing.[5] A DHHR worker testified that the DHHR had ongoing concerns about petitioner's ability to parent. According to the worker, petitioner made no measurable progress during his improvement period and failed to "internalize or apply the strategies and interventions" he learned during the improvement period. She also testified that petitioner failed to "take the concepts [and] strategies . . . and apply [them] with the child." The worker further testified that petitioner was unwilling to internalize any parenting skills because he believed that he "already knows how to parent" and that the parenting skills classes are a "waste of time." The parenting skills service provider testified that petitioner made no improvement in his ability to parent, despite months of service. She also testified that petitioner has "very little impulse control" and that he did not inquire as to the child's current stage of development. Based on the evidence presented, the circuit court found that petitioner failed to internalize the parenting skills he learned and noted that petitioner's psychological evaluation indicated that his parenting abilities were limited. The circuit court also determined that it "[does not] see a whole lot of possibility that the situation with respect to [petitioner] and being an effective parent is going to change in the near future." The circuit court found that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect and terminated his parental rights to J.T.[6] It is from that August 19, 2016, order that petitioner appeals.[7]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been

[5]According to the record, the dispositional hearing began on July 15, 2016, and was continued on August 4, 2016.

[6]The parental rights of both parents to J.T. were terminated below. The guardian states that J.T. was placed in foster care with the same family as her maternal half-brother and the permanency plan is adoption into that home.

[7]On appeal, petitioner does not raise a specific assignment of error regarding the circuit court's termination of parental rights.

3

committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

Petitioner's first argument on appeal is that the circuit court failed to make appropriate findings, as required by West Virginia Code § 49-4-604(c) and failed to give him an opportunity to correct the conditions of abuse and neglect. This Court does not agree. Pursuant to West Virginia Code § 49-4-604(c), "'no reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Further, West Virginia Code § 49-4-604(c)(3) provides that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

Contrary to petitioner's argument, it is clear from the record that he did not respond to the case treatment plan below. The circuit court was presented with testimony that petitioner did not know how to properly feed, bathe, or care for the child, yet maintained that parenting skills classes were a "waste of time." The circuit court made detailed findings on the record that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect because he failed to internalize the parenting skills he learned. According to the record, the circuit court summarized petitioner's progress as a "mixed success" because, while he did not appear to have a drug or alcohol problem, he continued to display parenting issues despite receiving several months of services. The circuit court found that petitioner's ability to be an effective parent was limited as indicated by the psychological evaluation, his inability to properly supervise his child, and his failure to implement the parenting skills he learned throughout the improvement period. There was no evidence that petitioner was able to internalize or implement the parenting skills he learned and the circuit court determined that it did not "see a whole lot of possibility that the situation with respect to [petitioner] and being an effective parent is going to change in the near future." The circuit court also determined that petitioner failed to benefit from the services provided to him because he "believed that everyone is conspiring against him" and that he had no parenting deficiencies to remedy. As such, the circuit court did not err in finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future.

Petitioner also contends that the circuit court failed to give him an "adequate and fair opportunity to make corrections identified by a case treatment plan." We disagree. Pursuant to West Virginia Code § 49-4-610, "[a]fter finding that a child is an abused or neglected child . . . a court may grant a respondent an improvement period of a period not to exceed six months." According to the record, petitioner was given more than seven months to complete the terms and conditions of his improvement period and had supervised visitation with J.T. for six months. Petitioner was largely ineffective while parenting J.T. during his supervised visits because he was not able to internalize the abilities of the child and blamed the child for circumstances that he needed to control. Additionally, he refused to contact the foster parents to determine what food the child was eating or toys she liked to play with. The record is clear that petitioner failed to complete the terms and conditions of his post-adjudicatory improvement period and was granted sufficient time to show improvement in his parenting abilities.

Petitioner argues that the circuit court erred by placing him on a pre-adjudicatory improvement period. In support of his argument, petitioner contends that the circuit court "paid so little attention to the procedural status of this case" that it placed him on an improvement period when there were no allegations of abuse or neglect against him. We disagree. It is well-established law that "[a] judgment will not be reversed for any error in the record introduced by or invited by the party seeking reversal." Syl. Pt. 4, *State v. Mann,* 205 W.Va. 303, 518 S.E.2d 60 (1999) (internal citations omitted). As this Court explained in *State v. Crabtree,* 198 W.Va. 620, 482 S.E.2d 605 (1996):

> 'Invited error' is a cardinal rule of appellate review applied to a wide range of conduct. It is a branch of the doctrine of waiver which prevents a party from inducing an inappropriate or erroneous response and then later seeking to profit from that error. The idea of invited error is . . . to protect principles underlying notions of judicial economy and integrity by allocating appropriate responsibility for the inducement of error. Having induced an error, a party in a normal case may not at a later stage of the trial use the error to set aside its immediate and adverse consequences.

*Id.* at 627, 482 S.E.2d at 612. It is clear from the record that petitioner requested the pre-adjudicatory improvement period even though there were no allegations of abuse or neglect against him at that time. As such, we find that petitioner invited the error about which he now complains. Therefore, given the particular circumstances present in this matter, we find that petitioner waived this issue for appellate review.

Petitioner also assigns error to the circuit court's termination of his post-adjudicatory improvement period. In support of his argument, petitioner contends that failing to supervise another child, which resulted in that child falling down a flight of stairs, was the "only positive allegation of abuse or neglect made against [him] until well into the improvement period." We disagree with petitioner's contention that the circuit court must substantiate acts of abuse or neglect that occurred during an improvement period in order to terminate said improvement period. With regard to the termination of improvement periods, West Virginia Code § 49-4-610 provides that a circuit court has discretion to grant, extend, or terminate an improvement period. West Virginia Code § 49-4-610(7) requires the termination of an improvement period "when the

court finds that [a parent] has failed to fully participate in the terms of the improvement period." Additionally, we have long held that "[i]t is within the court's discretion . . . to terminate the improvement period . . . if the court is not satisfied that the [parent] is making the necessary progress." Syl. Pt. 2, *In re Lacey P.*, 189 W.Va. 580, 433 S.E.2d 518 (1993).

In this case, contrary to his claims on appeal, petitioner clearly failed to make the necessary progress in his improvement period. As previously stated, petitioner displayed parenting issues despite receiving several months of services. After considering petitioner's limited parenting abilities, the circuit court found that he failed to implement the parenting skills he learned throughout the pendency of the improvement period. According to the record, there was no evidence that petitioner was able to internalize or implement the parenting skills he learned and failed to benefit from the services provided to him because he believed that "everyone [was] conspiring against him" and that he had no parenting deficiencies to remedy. Further, petitioner was advised by the circuit court upon the grant of his post-adjudicatory period that failure to comply with the conditions of the improvement period "may result in immediate [r]evocation of the [i]mprovement [p]eriod and subsequently to possible [t]ermination of [p]arental [r]ights." As such, we find no error in the circuit court's decision to terminate petitioner's improvement period based on unsatisfactory progress.

Finally petitioner argues that the circuit court failed to make explicit findings of fact and conclusions of law in the dispositional order. We disagree. We have previously recognized that

> where [an] order terminating parental rights merely declares that there is no reasonable likelihood that a parent can eliminate the conditions of neglect, without explicitly stating factual findings in the order or on the record supporting such conclusion, and fails to state statutory findings required by West Virginia Code [49-4-604] on the record or in the order, the order is inadequate.

*In re Edward B.*, 210 W.Va. 621, 633, 558 S.E.2d 620, 634 (2001).

According to the record, the circuit court fully and completely addressed the issues that continued to exist with regard to petitioner's lack of parenting skills. The circuit court found that petitioner failed to internalize the parenting skills he learned and that his parenting abilities were limited. The circuit court further found that petitioner failed to internalize or apply the strategies and interventions he learned during the improvement period and failed to apply the strategies to parenting J.T. The circuit court determined that petitioner was unwilling to internalize any parenting skills because he believed that he already knew how to parent and that the parenting skills classes were a waste of his time. Finally, the circuit court determined that it did not see the possibility petitioner being an effective parent in the near future. Based on the evidence presented, the circuit court concluded that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect and terminated his parental rights to J.T. Accordingly, we find no error in the circuit court's dispositional order.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 19, 2016, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 19, 2017


**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

**DISSENTING**:

Justice Robin Jean Davis