727 S.E.2d 840

**STATE of West Virginia, Plaintiff Below, Respondent**

v.

**Samuel D. SCARBRO, Jr., Defendant Below, Petitioner.**

No. 11–0090.

Supreme Court of Appeals of West Virginia.

Submitted April 25, 2012.

Decided June 7, 2012.

Thomas K. Fast, Esq., Fast Law Office, Fayetteville, WV, for Petitioner.

Darrell V. McGraw, Esq., Attorney General, Michelle Bishop, Esq., Assistant Attorney General, Charleston, WV, for Respondent.

PER CURIAM:

Petitioner Samuel D. Scarbro, Jr. appeals his conviction in the Circuit Court of Fayette County of the felony offense of fraudulent use of a bank conveyance or access device in violation of W. Va.Code § 61–3C–13(c) (1989).[1] Because this Court finds error in the circuit court's refusal to admit into evidence a prior inconsistent statement of the State's key witness, we reverse the petitioner's conviction and remand for a new trial.

## I.

## FACTS

The pertinent facts are as follows. In January 2010, Petitioner Samuel D. Scarbro, Jr., and his girlfriend, Christine Lukach, transported Ms. Lukach's ex-boyfriend, James Reid, to do some shopping. After the petitioner and Ms. Lukach picked up Mr. Reid in the petitioner's truck, the petitioner drove to a nearby Automated Teller Machine ("ATM") so that Ms. Lukach could withdraw money with her bank card.

Immediately prior to the petitioner's arrival at the ATM, Earl Keith Withrow, Jr. used the bank card of his wife, Cassie Withrow, to withdraw money from the ATM. After completing his transaction, Mr. Withrow drove away from the ATM and inadvertently left his wife's banking card in the machine. When the petitioner pulled up to the ATM, he noticed that the ATM revealed a message to the effect of, "Do you want to make another transaction?" The petitioner pressed the "No" button. The ATM then ejected Ms. Withrow's card. The petitioner retrieved Ms. Withrow's card and put it on the dashboard of his truck. Ms. Withrow's bank card was subsequently used that night to make purchases at five locations. As a result, the petitioner was ultimately charged with five counts of fraudulent use of a bank conveyance or access device in violation of W. Va. Code § 61–3C–13(c).[2]

The State's key witness against the petitioner at trial was James Reid. Prior to the petitioner's trial, Mr. Reid pled guilty to two criminal counts arising from the wrongful use of Ms. Withrow's bank card.[3] Pertinent to

---

1. W. Va.Code § 61–3C–13(c) provides:

    Any person who knowingly, willfully and with intent to defraud possesses a counterfeit or unauthorized access device or who knowingly, willfully and with intent to defraud, uses, produces or traffics in any counterfeit or unauthorized access device shall be guilty of a felony, and, upon conviction thereof, shall be fined not more than ten thousand dollars or imprisoned in the penitentiary for not more than ten years, or both.
    An "access device" is defined by the statute as any card, plate, code, account number, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to

    initiate a transfer of funds (other than a transfer originated solely by paper instrument)[.] W. Va.Code § 61–3C–13(a)(1). An " '[u]nauthorized access device' means any access device that is lost, stolen, expired, revoked, canceled, or obtained without authority[.]" W. Va.Code § 61–3C–13(a)(3).

2. The State presented evidence at the petitioner's trial that on the night the petitioner obtained Ms. Withrow's bank card, the card was used at five locations. The petitioner was convicted only with regard to the purchases made with Ms. Withrow's card at Walmart.

3. According to the petitioner, Mr. Reid pled guilty to one count of fraudulent use of a bank

this appeal, Mr. Reid testified at the petitioner's trial that he, the petitioner, and Ms. Lukach traveled to Walmart where Mr. Reid, with the full knowledge of the petitioner, purchased three cartons of cigarettes with Ms. Withrow's card. According to Mr. Reid, he kept one carton of cigarettes, gave one carton to the petitioner, and gave one carton to Ms. Lukach.

During cross-examination, defense counsel attempted to impeach Mr. Reid's credibility with the use of an allegedly prior inconsistent statement that Mr. Reid previously had given to the investigating officer in the case, Trooper Milam. Defense counsel then moved to have the statement admitted into evidence. After the prosecutor objected to the admission of the statement on the basis of hearsay, the court denied its admission. The court explained that defense counsel had elicited from Mr. Reid the relevant information from the statement, and the admission of the statement into evidence would unduly complicate and "clutter" the record.

The petitioner admitted in his trial testimony that he retrieved Ms. Withrow's bank card from the ATM and placed it on the dashboard of his truck. He further testified that he knew that Mr. Reid removed the card from the dash. However, the petitioner denied personally using Ms. Withrow's card to purchase anything. He further testified that he did not know that Mr. Reid used Ms. Withrow's card until Mr. Reid purchased the three cartoons of cigarettes at Walmart. According to the petitioner, at that point he became suspicious of Mr. Reid and asked him if he used the card. When Mr. Reid denied using the card, the petitioner did not believe him and took him home. The petitioner further indicated that he told Mr. Reid, "I'm done with you." The petitioner testified, "that's the last dealings I've had with [Mr. Reid]."

The jury acquitted the petitioner of four counts in the indictment, but found him guilty of the count regarding the purchases made with Ms. Withrow's card at Walmart. The circuit court sentenced the petitioner to the penitentiary for a determinate period of two years.

conveyance or access device and one count of

## II.

### STANDARD OF REVIEW

The dispositive issue in this opinion is whether the circuit court erred in excluding from the evidence at trial Mr. Reid's prior statement. This Court previously set forth the applicable standard for reviewing this issue as follows:

A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are reviewed for an abuse of discretion. *See McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995). Even when a trial court has abused its discretion by admitting or excluding evidence, the conviction must be affirmed unless a defendant can meet his or her burden of demonstrating that substantial rights were affected by the error. *See State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996). In other words, a conviction should not be reversed if we conclude the error was harmless or "unimportant in relation to everything else the jury considered on the issue in question." *Yates v. Evatt*, 500 U.S. 391, 403, 111 S.Ct. 1884, 1893, 114 L.Ed.2d 432, 449 (1991). Instead, this Court will only overturn a conviction on evidentiary grounds if the error had a substantial influence over the jury. This reasoning suggests that when the evidence of guilt is overwhelming and a defendant is allowed to put on a defense, even if not quite so complete a defense as he or she might reasonably desire, usually this Court will find the error harmless. If, however, the error precludes or impairs the presentation of a defendant's best means of a defense, we will usually find the error had a substantial and injurious effect on the jury. When the harmlessness of the error is in grave doubt, relief must be granted. *O'Neal v. McAninch*, 513 U.S. 432, [438], 115 S.Ct. 992, 996, 130 L.Ed.2d 947, 955 (1995); *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

*State v. Blake*, 197 W.Va. 700, 705, 478 S.E.2d 550, 555 (1996). With this standard

computer fraud.

in mind, we turn to a discussion of the issue before us.

## III.

## DISCUSSION

Our law governing the admission of a witness's prior inconsistent statement is found in Syllabus Point 1 of *State v. Blake*, 197 W.Va. 700, 478 S.E.2d 550 (1996), in which this Court held:

Three requirements must be satisfied before admission at trial of a prior inconsistent statement allegedly made by a witness: (1) The statement actually must be inconsistent, but there is no requirement that the statement be diametrically opposed; (2) if the statement comes in the form of extrinsic evidence as opposed to oral cross-examination of the witness to be impeached, the area of impeachment must pertain to a matter of sufficient relevancy and the explicit requirements of Rule 613(b) [4] of the West Virginia Rules of Evidence—notice and an opportunity to explain or deny—must be met; and, finally, (3) the jury must be instructed that the evidence is admissible only to impeach the witness and not as evidence of a material fact.

(Footnote added).

The first requirement under *Blake* is that the statement at issue must actually be inconsistent. The petitioner asserts that Mr. Reid's pre-trial statement was inconsistent with his in-court testimony. According to

the petitioner, Mr. Reid indicated in his pretrial statement that due to his intoxication, he accidentally used Ms. Withrow's card to purchase cigarettes at Walmart thinking that he was using Ms. Lukach's card. In contrast, Mr. Reid testified at the petitioner's trial that he knowingly used Ms. Withrow's card at Walmart with the petitioner's consent.

The State responds that the circuit court did not err in denying the admission of Mr. Reid's pre-trial statement because the petitioner failed to show that Mr. Reid's pre-trial statement was inconsistent with his testimony at trial. According to the State, Mr. Reid testified ambiguously to the fact that he used "the card" at Walmart, and it is unclear whether he was referring to Ms. Withrow's card or Ms. Lukach's card. The State also asserts that defense counsel was given wide latitude to use the statement in his cross-examination of Mr. Reid.

Despite the State's very capable argument before this Court to the contrary,[5] this Court finds that Mr. Reid's pre-trial statement is inconsistent with his trial testimony. In his pre-trial statement, Mr. Reid indicated that he had Ms. Lukach's consent to use her bank card to purchase some items at Walmart but that, as a result of his intoxication, he mistakenly used Ms. Withrow's bank card to purchase the items instead of Ms. Lukach's card.[6] Significantly, Mr. Reid's pre-trial statement does not inculpate the petitioner in the intentional misuse of Ms. Withrow's bank

---

**4.** According to Rule 613(b) of the West Virginia Rules of Evidence,

*Extrinsic evidence of prior inconsistent statement of witness.*—Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a partyopponent as defined in Rule 801(d)(2).

**5.** This appeal was well argued by counsel for both parties. Although the attorney for the State did not prevail, she presented compelling arguments.

**6.** The transcript of Mr. Reid's pretrial statement indicates in relevant part the following:

**Mr. Reid:** From what I can *inaudible, remember from that night [Ms. Withrow's card] was took, they put their card in, withdrawled [sic] some money, the card had pulled out, set it on the dash of the truck. We went to a couple of stores. I'd asked [Ms. Lukach] to borrow her card, to loan me some money and she throwed [sic] her card up with [Ms. Withrow's card] on the dash, I'm not sure you know, like I said I was pretty intoxicated and if I'm on camera I understand that, I mean. I'm, I'm willing to make matters right.

\*　　\*　　\*

**[Trooper Milam]** Okay. All this time you're under the impression that it was, from what you're telling me, you were under the impression it was you [sic] ex-girlfriends [sic] credit card, right?
**Mr. Reid:** Yes.

card. In contrast, Mr. Reid testified at trial that Ms. Lukach told him with the petitioner's knowledge to use "the card" to purchase cigarettes at Walmart. Later in his testimony Mr. Reid admitted that "I did sign Ms. Withrow's name at ... Walmart." The fact that Mr. Reid signed Ms. Withrow's name at Walmart indicates that he intentionally used Ms. Withrow's card to make his Walmart purchase. Obviously, Mr. Reid would not present Ms. Lukach's card for payment and then sign Ms. Withrow's name. Moreover, even if Mr. Reid had mistakenly used Ms. Withrow's card at Walmart believing that it was Ms. Lukach's card, as he claimed in his pre-trial statement, he would have signed Ms. Lukach's name upon making his purchase, not Ms. Withrow's name.

In sum, it is clear to this Court that Mr. Reid gave the impression in his pre-trial statement that his use of Ms. Withrow's card at Walmart was an accident. In contrast, Mr. Reid gave the impression at trial that he knowingly used Ms. Withrow's card at Walmart and that he did so with the petitioner's knowledge and consent. It has been recognized that

> [t]he prior statement, no matter the form, must be inconsistent with the witness's trial testimony. Direct inconsistency is not required. The test for any inconsistency is whether the prior statement or omission has a reasonable tendency to discredit the testimony of the witness. To fulfill the necessary requirement of inconsistency, the witness's statements need not be explicitly contradictory, e.g., "the light was red" versus "the light was green." On the other hand, the testifying witness may even be impeached with prior statements that are inconsistent with the "impression" the witness's testimony creates.

Franklin D. Cleckley, *Handbook On Evidence For West Virginia Lawyers*, Vol. 1, § 6–9(B)(5), p. 6–179 (2000). Mr. Reid's pre-trial statement is inconsistent with the impression created by his testimony at trial. Therefore, we find that the first requirement of *Blake* is met.

■ The second requirement of *Blake* provides that "[i]f the statement comes in the form of extrinsic evidence as opposed to oral cross-examination of the witness to be impeached, the area of impeachment must pertain to a matter of sufficient relevancy and the explicit requirements of Rule 613(b) of the West Virginia Rules of Evidence—notice and an opportunity to explain or deny—must be met[.]" Syl. pt. 1, in part, *Blake, supra.* We note that the evidence at issue is extrinsic in nature in that the petitioner sought the introduction into evidence of a copy of Mr. Reid's transcribed pre-trial statement. "Extrinsic evidence entails either calling a third party to testify to the existence and content of the prior inconsistent statement or presenting some documentary or recorded form of the statement." Cleckley, *supra,* at § 6–9(B)(2), p. 6–157. Clearly Mr. Reid's pre-trial statement pertained to a matter of sufficient relevancy which is the culpability of the petitioner in Mr. Reid's intentional misuse of Ms. Withrow's bank card. Also, we find that notice and an opportunity for Mr. Reid to explain or deny the pre-trial statement were present. Mr. Reid was testifying at the time the petitioner sought admission of the pre-trial statement, and Mr. Reid would have had the opportunity to explain or deny the inconsistencies. Moreover, the State would have had the opportunity to question Mr. Reid on redirect regarding the inconsistent statement. Therefore, this Court finds that the second requirement under *Blake* for the admission of the prior inconsistent statement is satisfied in this case.

Finally, *Blake* requires that upon admission of a prior inconsistent statement of a witness, the circuit court should instruct the jury that the statement was admitted only for the purpose of impeachment and not as substantive evidence. Because the prior inconsistent statement was not admitted below, this requirement is not pertinent to our analysis.

■ Based on the above, this Court finds that the requirements for the admission into evidence of a prior inconsistent statement under *Blake* are met in this case. Accordingly, Mr. Reid's pre-trial statement should have been admitted at the petitioner's trial, and the circuit court's refusal to do so constitutes error. In addition, for the reasons provided below, we believe that the circuit

court's error in excluding the evidence was not harmless.

In determining that the circuit court's exclusion of Mr. Reid's prior inconsistent statement was not harmless, we are instructed by this Court's reasoning in *State v. Foster*, 171 W.Va. 479, 300 S.E.2d 291 (1983). In *Foster*, the appellant had been convicted of first-degree murder without a recommendation of mercy from the jury. The appellant's defense at trial was that he shot the victim in self-defense because the victim pulled a gun. The State presented rebuttal testimony of an eyewitness who had testified earlier but who testified for the first time on rebuttal that the victim was unarmed. At that point, the appellant sought to impeach this witness's testimony with a contradictory letter in which the witness had written that the victim had a gun when she was shot. However, the State objected to the letter's admission, and the court sustained the objection.[7]

In reversing the appellant's murder conviction, this Court explained:

A criminal defendant has a broad right to impeach prosecution witnesses on cross-examination with prior inconsistent statements. While the scope of cross-examination is generally within the discretion of the trial court and usually limited to matters brought out on direct, the trial court may not control the scope of cross-examination so far as to prejudice the defendant. Furthermore, we are advised that cross-examination to impeach is not, in general, limited to matters brought out on direct examination. The right to an effective cross-examination is an integral part of the confrontation clause of the Sixth Amendment to the United States Constitution[.]

\* \* \*

.... [T]he single piece of evidence most damaging to appellant's claim of self-defense was the testimony of the sole eyewitness that the victim was unarmed when the appellant shot her. To forbid the defense to enter into evidence a prior inconsistent statement of the prosecution's star witness on this very matter was to deny the appellant a fair trial.

171 W.Va. at 482–83, 300 S.E.2d at 294–95 (citations and quotation marks omitted).

Similarly, in the instant case, Mr. Reid was the State's key witness against the petitioner, yet the petitioner was prevented from entering into evidence Mr. Reid's prior inconsistent statement. As in *Foster*, we believe that this denied the petitioner a fair trial. This Court is not unmindful that in the instant case defense counsel was permitted to cross-examine Mr. Reid with regard to the prior inconsistent statement. However, we do not agree with the State that this was sufficient under these facts. A person in jeopardy of losing his liberty should be afforded, within the rules of evidence, the opportunity to challenge the State's evidence with his best means of defense. Mr. Reid, as the State's key witness, presented the most damaging evidence against the petitioner. Therefore, the petitioner should have been permitted to impeach Mr. Reid's testimony by entering into evidence Mr. Reid's prior inconsistent statement.

■ Also significant to our finding that the error is not harmless is the fact that the evidence against the petitioner was less than overwhelming. The petitioner was charged with five counts of fraudulent use of a bank conveyance or access device. The State presented evidence at the petitioner's trial, independent of Mr. Reid's testimony, that the petitioner retrieved Ms. Withrow's bank card from the ATM and that Ms. Withrow's card was subsequently used shortly thereafter to make purchases at five locations. Nevertheless, the jury acquitted the petitioner of four of the charges against him. This fact suggests to us that Mr. Reid's testimony was crucial to the petitioner's single conviction. Had the petitioner been permitted to impeach Mr. Reid's testimony by entering into evidence Mr. Reid's prior inconsistent statement, the jury may have reached a different conclusion with regard to the petitioner's guilt. In Syllabus Point 4 of *State v. Blake*, this Court held:

Because it was not, the court concluded that the letter could not be admitted during the witness's rebuttal testimony.

---

7. The court in *Foster* reasoned that the letter, because it also impeached elements of the witness's direct testimony, should have been used to impeach the witness when he originally testified.

Assessments of harmless error are necessarily content-specific. Although erroneous evidentiary rulings alone do not lead to automatic reversal, a reviewing court is obligated to reverse where the improper exclusion of evidence places the underlying fairness of the entire trial in doubt or where the exclusion affected the substantial rights of a criminal defendant.

Based on the importance of Mr. Reid's testimony and the less than overwhelming nature of evidence against the petitioner, this Court believes that the improper exclusion of Mr. Reid's prior inconsistent statement places the fairness of the petitioner's trial in doubt. Therefore, we conclude that the petitioner's conviction must be reversed and this case remanded for a new trial.

■■■ The petitioner raised two remaining issues on appeal which this Court will briefly discuss in the event the issues arise in a retrial of the petitioner. First, the petitioner alleges that the circuit court committed reversible error by failing to give a cautionary instruction to the jury regarding Mr. Reid's testimony that he had pled guilty to two crimes relating to his misuse of Ms. Withrow's bank card. In support of this assignment of error, the petitioner relies on syllabus point 3 of *State v. Caudill,* 170 W.Va. 74, 289 S.E.2d 748 (1982), which provides:

> In a criminal trial an accomplice may testify as a witness on behalf of the State to having entered a plea of guilty to the crime charged against a defendant where such testimony is not for the purpose of proving the guilt of the defendant and is relevant to the issue of the witness-accomplice's credibility. The failure by a trial judge to give a jury instruction so limiting such testimony is, however, reversible error.

The State responds that the circuit court's failure to give a limiting instruction is not reversible in this case because the petitioner did not request the instruction, and there was no plain error in the omission. This Court agrees with the petitioner that the circuit court's failure to give a limiting instruction in response to Mr. Reid's testimony of his guilty plea to the same crime charged against the petitioner was error under Syllabus Point 3 of *State v. Caudill, supra.*[8] However, because this Court reverses this case based on the circuit court's exclusion of Mr. Reid's prior inconsistent statement, we find it unnecessary to determine whether the failure to give the limiting instruction constituted plain error.[9]

### IV.

### CONCLUSION

For the reason set forth above, we reverse the petitioner's conviction of the felony offense of fraudulent use of a bank conveyance or access device in violation of W. Va.Code § 61–3C–13(c), and we remand this case to the circuit court for proceedings consistent with this opinion.

Reversed and remanded.

---

8. As noted above, the petitioner was convicted of one count of fraudulent use of a bank conveyance or access device. According to the petitioner, Mr. Reid entered a plea of guilty to one count of fraudulent use of a bank conveyance or access device and one count of computer fraud.

9. Finally, the petitioner asserts that his sentence of two years in the penitentiary for a purchase of three cartons of cigarettes with Ms. Withrow's card violates the constitution's prohibition on cruel and unusual punishment and is disproportionate to the crime committed. Because we are reversing the petitioner's conviction, we deem it unnecessary to consider this issue.