# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 18-0666** (Marion County CC-24-2014-F-34)

**Richard F.,**
**Defendant Below, Petitioner**

**FILED**

**January 13, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Richard F.,[1] by counsel Sara B. Hall, appeals his conviction in the Circuit Court of Marion County on two counts of sexual abuse by a parent, guardian, or custodian under West Virginia Code § 61-8D-5.[2] Respondent State of West Virginia, by counsel Elizabeth Grant, filed a response in support of the circuit court's order.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On February 4, 2014, a grand jury indicted petitioner on five counts of sexual abuse by a parent, guardian, or custodian under West Virginia Code § 61-8D-5. The victim, A.H., was a close friend of petitioner's daughters and spent significant time, including overnights, at petitioner's house. The indictment alleged that the crimes occurred between January 1, 2003, and March 14, 2006.

On March 16, 2016, two weeks before petitioner's trial, the State discovered Facebook messages between petitioner and A.H. that it wished to admit during its case-in-chief. The messages documented petitioner's offer to give A.H. $5,000 to help her pay for college. The State

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2] On October 14, 2016, the circuit court sentenced petitioner to ten to twenty years in prison on each count, with the sentences to run consecutively. The circuit court resentenced petitioner to the same terms on July 17, 2018, to enable this appeal.

immediately disclosed the messages to petitioner's counsel and then supplemented its exhibit list. At a subsequent pretrial hearing, petitioner did not object to the messages, nor did he move for a continuance due to the timing of the disclosure of the messages.

Petitioner's trial commenced on March 30, 2016. Following jury selection, petitioner objected to the admission of the Facebook messages on the ground that the State disclosed the messages two weeks prior to trial and that authentication of the messages would be impossible. The circuit court asked petitioner's counsel why he had not objected to the Facebook messages at the pre-trial hearing. The circuit court then ruled that it would allow the messages if the State properly authenticated them.[3] However, the circuit court gave petitioner's counsel the option of continuing the trial until the next term of court. Petitioner's counsel did not request a continuance.

During its case-in-chief, the State called A.H. who was then twenty-four years old. A.H. testified that petitioner first abused her when she was about nine years old. She said that the abuse occurred when she and petitioner were sitting alone together. Petitioner gave her a foot rub and then slid his hands underneath her bra and touched her breasts. Petitioner also slid his hands down her pants, held onto the sides of her underwear, and asked what kind of underwear she was wearing. A.H. further testified that, thereafter, whenever she spent the night at petitioner's house with petitioner's daughters, petitioner would approach her while she was sleeping, touch her vagina with his fingers, and insert his fingers into her vagina. A.H. testified this happened so many times, she "lost count." A.H. testified that when she was fourteen years old, she told a school counselor about the abuse, and the counselor referred the case to Child Protective Services ("CPS"). The police and a CPS worker interviewed A.H.; however, petitioner was neither arrested nor charged with any crimes.

A.H. further testified that in 2010, when she was eighteen years old, she messaged petitioner on Facebook, and later met with him face to face. She testified that she told petitioner that his actions hurt her and that petitioner apologized. She also testified that petitioner "started to tell [her] the things he was thinking when he was doing what he did to me. About how developed I was. How pretty I was." A.H. said she "couldn't handle it so she turned and left."

A.H. then testified that she reported the abuse again in 2012 to West Virginia State Police Trooper Horne. The Trooper investigated the case, but explained to A.H. that it would be difficult to prove given that the crimes allegedly occurred between 2003 and 2006. In response, A.H. suggested she meet petitioner in person while wearing a recording device in an attempt to gather

---

[3] With regard to the authentication of Facebook or other social media-based text messages, we held in Syllabus Point 2 of *State v. Benny W.*, -- W.Va. --, -- S.E.2d --, 2019 WL 5301942 (2019), that,

> Under Rule 901(a) of the West Virginia Rules of Evidence, social media text messages may be authenticated in numerous ways including, for example, by a witness who was a party to sending or receiving the text messages, or through circumstantial evidence showing distinctive characteristics that link the sender to the text messages.

2

evidence. A.H. then messaged petitioner via Facebook and arranged to meet him at a local park on May 16, 2012. At the meeting, A.H. was equipped with audio and visual recording equipment provided by the police, and she recorded her discussion with petitioner.

At trial, the State played the recording of A.H. and petitioner's May 16, 2012, meeting for the jury. The recording reveals the following: Initially, A.H. told petitioner she hoped to move to New York to study music, but that the school was very expensive. Petitioner responded with a joke about having his checkbook with him and writing out a check for the money she needed to go to school. After some general discussion, A.H. broached the subject of petitioner's sexual abuse and asked "why me?" Petitioner replied, "why you, why did we have the relationship we did?" Petitioner then labeled his interaction with A.H. as "abuse" and said it was "impulsive" and "the wrong thing." A.H. inquired, "did you ever stop and think I shouldn't do this to her?" Petitioner responded, "yes, but not at that moment." Petitioner ultimately confessed: "Yea. I did. I touched you." Petitioner also offered that if A.H. wanted to "blow off steam" she could contact him and call him a "raper [sic], child abuser, destroyer of my life." Petitioner also said, "you got me by the cojones"; you could "put me in prison." A.H. concluded her testimony on direct by stating that petitioner's sexual abuse caused her to suffer from post-traumatic stress disorder and anxiety, that she did not like to touch other people or to have other people touch her, and that she has difficulty in trusting people and in building relationships.

Finally, the State entered evidence through A.H. that, following the recorded meeting between A.H. and petitioner, petitioner via Facebook messages offered to give A.H. $5,000 to help her pay for college.

On cross-examination, petitioner sought to admit through A.H. more than seven[4] of A.H.'s recent Facebook and Instagram social media posts, including photographs, that A.H. posted nine years after petitioner's last alleged instance of abuse. In some of the photographs, A.H. is alone; in one photograph, A.H. is kissing her boyfriend; and, in another photograph, she is face-to-face with a male friend. Petitioner's counsel argued that the photographs constituted prior inconsistent statements regarding A.H.'s claim that she did not like to touch other people or to have other people touch her, and that she had difficulty in trusting people and in building relationships. The State objected on relevance grounds. The circuit court examined the posts under Rule 608 (oath/affirmation to testify truthfully) and Rule 613 (witness's prior statement) of the West Virginia Rules of Evidence, but did not set forth its reasoning in limiting the number of social media posts to seven. Petitioner's counsel then published the seven photographs to the jury as he questioned A.H. about each of them.

During petitioner's case-in-chief, his counsel called Trooper Horne to testify. Petitioner also testified on his own behalf. Petitioner denied sexually abusing A.H., but testified that he had given A.H. foot massages. He also admitted apologizing to A.H. when they met in 2012, but said he was apologizing for the foot massages and that he believed A.H. was referencing the foot massages during their recorded May 16, 2012, conversation.

---

[4] Petitioner does not state exactly how many social media posts he sought to admit into evidence at trial.

3

On April 1, 2016, the jury convicted petitioner of two counts of sexual abuse by a parent, guardian, or custodian. By order entered October 14, 2016, the trial court sentenced petitioner to ten to twenty years in prison on each count, with the sentences to run consecutively. The circuit court resentenced petitioner to the same terms on July 17, 2018, to enable this appeal.

Petitioner now appeals and raises two assignments of error both of which regard the admission or exclusion of evidence at petitioner's trial. "The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syl. Pt. 3, *State v. Louk*, 171 W. Va. 639, 301 S.E.2d 596 (1983) (citations omitted). "Even when a trial court has abused its discretion by admitting or excluding evidence, the conviction must be affirmed unless a defendant can meet his or her burden of demonstrating that substantial rights were affected by the error. *See State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996)." *State v. Blake*, 197 W. Va. 700, 705, 478 S.E.2d 550, 555 (1996).

Petitioner first argues that the circuit court erred in allowing him to admit into evidence at trial only seven of A.H.'s social media posts. Petitioner asserts that he intended to use the non-admitted posts to challenge A.H.'s claim that her life was inalterably damaged by petitioner's sexual abuse, i.e., that petitioner's abuse caused her to suffer from post-traumatic stress disorder and anxiety, and to have difficulty in trusting people and building relationships. Petitioner asserts that because the circuit court allowed him to admit only seven posts, it denied him his right to fully cross-examine A.H. to his prejudice.

At trial, petitioner argued that A.H.'s social media posts were prior inconsistent statements.

> "Three requirements must be satisfied before admission at trial of a prior inconsistent statement allegedly made by a witness: (1) The statement actually must be inconsistent, but there is no requirement that the statement be diametrically opposed; (2) if the statement comes in the form of extrinsic evidence as opposed to oral cross-examination of the witness to be impeached, the area of impeachment must pertain to a matter of sufficient relevancy and the explicit requirements of Rule 613(b) of the West Virginia Rules of Evidence—notice and an opportunity to explain or deny—must be met; and, finally, (3) the jury must be instructed that the evidence is admissible only to impeach the witness and not as evidence of a material fact." Syl. pt. 1, *State v. Blake*, 197 W.Va. 700, 478 S.E.2d 550 (1996).

Syl. Pt. 1, *State v. Scarbro*, 229 W. Va. 164, 727 S.E.2d 840 (2012). Extrinsic evidence of a prior inconsistent statement is permitted only when, after questioning, the witness fails to admit to making the prior statement. *See State v. Holmes*, 177 W. Va. 236, 239, 351 S.E.2d 422, 425-426 (1986); *see also Blake*, 197 W. Va. at 708, 478 S.E.2d at 558 (reversing conviction where trial court denied defendant's motion to question witness regarding a critical omission in witness's prior statement).

We reject petitioner's claim that the circuit court erred in denying his motion to admit more than seven of A.H.'s social media posts. First, petitioner asserts that he intended to use the non-admitted posts to challenge A.H.'s claim that her life was inalterably damaged by petitioner's

sexual abuse. However, at trial petitioner did just that when he questioned A.H. about the seven admitted posts. Second, merely because A.H. was active on social media and had a boyfriend and a male friend does not contradict her claims that such relationships are difficult for her to build and that she finds it difficult to touch other people or to have other people touch her. Third, A.H.'s social media posts were irrelevant to proving the elements of sexual abuse by a parent, guardian, or custodian under West Virginia Code § 61-8D-5. Likewise, any long-term effects A.H. may have suffered as a result of petitioner's sexual abuse were of no consequence to the jury's determination of whether the State proved the elements of sexual abuse by a parent, guardian, or custodian under West Virginia Code § 61-8D-5. Finally, A.H. did not deny posting the social media posts; thus, under *Holmes* and *Blake*, any extrinsic evidence regarding the posts was not admissible.

Petitioner also fails to demonstrate that his substantial rights were prejudiced due to the circuit court's ruling limiting the number of admissible social media posts to seven. This Court will uphold an evidentiary ruling if "the error was harmless or 'unimportant in relation to everything else the jury considered on the issue in question.' *Yates v. Evatt*, 500 U.S. 391, 403, 111 S.Ct. 1884, 1893, 114 L.Ed.2d 432, 449 (1991)." *Scarbro*, 229 W. Va. at 167, 727 S.E.2d at 843. Reversal on evidentiary grounds is warranted only "if the error had a substantial influence over the jury." *Id.* "[W]hen the evidence of guilt is overwhelming and a defendant is allowed to put on a defense, even if not quite so complete a defense as he or she might desire, usually this Court will find the error harmless." *Id.*

Here, the jury heard overwhelming evidence of petitioner's guilt. First, A.H. testified to petitioner's sexual abuse. Second, the jury heard A.H. and petitioner's 2012 recorded conversation wherein petitioner labeled his interactions with A.H. as "abuse[,]" "impulsive[,]" and "the wrong thing[.]" Petitioner also admitted, "Yea. I did. I touched you" and that there was "no excuse" for his behavior. Petitioner also offered that if A.H. wanted to "blow off steam" she could contact him and call him a "raper [sic], child abuser, destroyer of my life." Finally, petitioner said, "you got me by the cojones" and that A.H. could "put [him] in prison." On this record, we find that the circuit court did not abuse its discretion in limiting the number of A.H.'s social media posts that petitioner could admit into evidence at trial.

Petitioner's second and final assignment of error is that the circuit court erred in denying his motion to exclude the Facebook messages sent by petitioner to A.H. after their May 16, 2012, meeting. In those messages, petitioner told A.H. that he would send her $5,000 to help her pay for college. Petitioner claims that the State failed to timely disclose the Facebook messages to him given that it disclosed them just two weeks prior to his trial. Petitioner argues that, having denied his motion to exclude the messages, the circuit court should have continued his trial. Finally, petitioner contends that he was prejudiced because he did not have time to prepare a defense to combat the newly disclosed Facebook messages and, therefore, the circuit court denied him a fair trial on the merits.

The State is required to disclose any statements "made by the defendant . . . within the possession, custody or control of the state, the existence of which is known, or by the exercise of due diligence may become known . . . ." W. Va. R. Crim. P. 16(a). Further, the State has a continuing duty to promptly supplement any additional evidence it discovers. *See* W. Va. Tr. Ct. R. 32.05. Trial Court Rule 32.06(b) provides that "[i]f at any time during the course of the

proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed . . . ."

"The traditional appellate standard for determining prejudice for discovery violations under Rule 16 of the West Virginia Rules of Criminal Procedure involves a two-pronged analysis: (1) did the non-disclosure surprise the defendant on a material fact, and (2) did it hamper the preparation and presentation of the defendant's case." *State v. Lewis*, 238 W. Va. 627, 797 S.E.2d 604 (2017) citing Syl. Pt. 2, *State ex rel. Rusen v. Hill*, 193 W. Va. 133, 454 S.E.2d 427 (1994). The trial court must also consider whether the "State disclose[d] the information to the defense as soon as reasonably possible." *State v. Mann*, 205 W. Va. 303, 310, 518 S.E.2d 60, 67 (1999) (citing *State v. Hager*, 176 W. Va. 313, 342 S.E.2d 281 (1986), *overruled on other grounds by*, *State v. Woodson*, 181 W. Va. 325, 382 S.E.2d 519 (1989) (finding no prejudice when State disclosed photo on day of trial and evidence was cumulative)).

Here, it is undisputed that the State met its continuing duty to supplement discovery under Trial Court Rule 32.05 because, immediately upon learning of petitioner's Facebook messages to A.H., the State disclosed them to petitioner's counsel. Petitioner's counsel did not object to the messages at the pre-trial hearing. Moreover, petitioner fails to show how the disclosure resulted in surprise on a material fact given that, in the recording of A.H.'s and petitioner's 2012 meeting in the park, A.H. and petitioner discussed how much A.H.'s schooling in New York would cost and then petitioner offered to write A.H. a check for her expenses. Thus, any inference that petitioner was trying to pay A.H. for her silence was exposed when the jury heard the recording of that meeting. Finally, petitioner fails to show how the two-week notice precluded him from obtaining evidence to challenge the Facebook messages. As for petitioner's claim that the circuit court erred by failing to grant a continuance, we find it to be meritless. Petitioner never moved to continue the trial despite the circuit court's willingness to do so, and petitioner does not claim plain error in this regard. Accordingly, we find that the circuit court did not abuse its discretion in allowing the admission of the Facebook messages in which petitioner offered to give A.H. $5,000 for school into evidence at trial.

For the foregoing reasons, we affirm petitioner's conviction of two counts of sexual abuse by a parent, guardian, or custodian under West Virginia Code § 61-8D-5.

Affirmed.

**ISSUED:** January 13, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison