# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re*: **C.A.**

**No. 15-0963** (Randolph County 14-JA-1)

**FILED**

**May 23, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner D.P. is the maternal grandparent of fourteen-year-old C.A., a child with special needs.[1] Petitioner served as C.A.'s custodian and psychological parent. By counsel David W. Hart, petitioner appeals the Circuit Court of Randolph County's August 31, 2015, order terminating her parental and custodial rights to the child. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem, Heather M. Weese, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her custodial and parental rights (1) because the evidence was insufficient to support termination; (2) because that termination was a "pretext" to facilitate long-term treatment for the child; and (3) on the basis of "continued family drama" caused by petitioner's multiple referrals of sexual abuse by the child's father to Child Protective Services ("CPS") when the DHHR failed to investigate those claims and protect the child.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2014, the DHHR filed an abuse and neglect petition against the child's biological parents and petitioner as the child's maternal grandmother and court-ordered

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Further, the nature of the child's special needs is unclear from the record on appeal.

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

psychological parent. In that petition, the DHHR alleged that the child was emotionally harmed by petitioner and other adults involved in the child's life who "used her as a pawn" in custody disputes and cross-referrals to CPS. The DHHR claimed that petitioner's conduct rose to the level of child abuse.

In April of 2014, petitioner filed a stipulation to the child abuse alleged in the February petition. In that stipulation, petitioner admitted that her conduct caused the child sufficient emotional harm to constitute child abuse. Specifically, petitioner admitted that she had a hostile relationship with the child's father and paternal grandmother, which prompted the filing of multiple petitions for protective orders and family court proceedings over child custody. Petitioner further admitted that she had at least one hostile encounter with the paternal grandmother in the child's presence, which was an incident that reportedly occurred at the child's school. Petitioner also acknowledged that she and others filed a total of twenty-seven referrals and cross-referrals to CPS against each other, which included referrals to CPS by petitioner that the child was sexually abused by her father. Based on those stipulations, the circuit court adjudicated petitioner as an abusing parent and the child as an abused child.

Thereafter, the circuit court granted petitioner's motion for a post-adjudicatory improvement period. For the remainder of 2014 and for several months into 2015, petitioner received services designed to teach her how to provide a safe and protective environment and to appropriately parent the child. In March of 2015, petitioner filed a motion to be reunified with the child.

In April of 2015, the circuit court held a hearing on petitioner's motion for reunification.[3] At that hearing, Brenda Hinkle, a psychologist who evaluated both the child and petitioner, testified that petitioner had an inadequate understanding of the child's special needs and that she failed to take responsibility for the harm she caused the child. Ms. Hinkle also informed the circuit court that the child, who was then twelve years old, requested not to be returned to petitioner. Based on her evaluations, Ms. Hinkle recommended that the child not be reunified with petitioner. At the hearing and in her written report, the guardian echoed Ms. Hinkle's statement as to the child's wishes that the child unequivocally did not want to return to petitioner's home. Two DHHR workers testified that petitioner failed to demonstrate that she would apply the training she received during her improvement period. One of the DHHR workers further testified that petitioner antagonized the child's paternal grandmother at conflict resolution classes by expressing negative "facial expressions and . . . body language." Petitioner generally disagreed with the DHHR's and Ms. Hinkle's conclusions and maintained that she could adequately provide for the child.

At the conclusion of that hearing, the circuit court found that petitioner "went through the phases of complying with her improvement period . . . . [but] based on the totality of the evidence . . . she has not internalized the tools offered through services and . . . is lacking in insight." The circuit court also found that termination of petitioner's rights was in the child's best

---

[3]At this hearing, the child's mother and father voluntarily relinquished their parental rights.

interests. For those reasons, by order entered on August 31, 2015, the circuit court terminated petitioner's custodial and parental rights to the child. This appeal followed.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first challenges the sufficiency of the evidence upon which the circuit court based its termination of custodial and parental rights. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights when there is no reasonable likelihood that a parent can substantially correct the conditions of abuse or neglect in the near future and termination is necessary for the child's welfare. West Virginia Code § 49-6-5(b)(3) provides that there is no reasonable likelihood the conditions of abuse or neglect can be substantially corrected when "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child."

We have also explained that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re: B.H. and S.S.*, 233 W.Va. 57, 754 S.E.2d 743 (2014). As noted in our standard of review above, we "must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873. Finally, "in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact." *In re Emily*, 208 W.Va. 325, 339, 540 S.E.2d 542, 556 (2000) (*citing* Syl. Pt. 1, in part, *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 (1999)); *see also Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997) (stating that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

3

In the case sub judice, we find that the circuit court was presented with sufficient evidence upon which to terminate petitioner's custodial and parental rights to the child. While petitioner argues that the circuit court terminated her rights based solely on her "'body language' [at the conflict resolution classes] and no other objective evidence," several witnesses, including an expert in psychology, testified at the final hearing that petitioner had not internalized the lessons provided in her court-ordered services. Evidence further established that petitioner failed to fully acknowledge, and could not properly care for, the child's special needs; that the child required treatment in a long-term facility due, in part, to the trauma caused by petitioner; and that the child did not wish to return to petitioner's home. Notwithstanding petitioner's superficial compliance with the services in her improvement period, the circuit court found that she failed to substantially correct the conditions that led to the underlying abuse. Given that petitioner failed to adequately follow through with rehabilitative services by failing to fully acknowledge and internalize the services provided to her, the evidence presented supports the circuit court's finding that there was no reasonable likelihood that she could substantially correct the conditions of abuse in the near future. As the entity charged with determining the credibility of witnesses and rendering findings of fact, the circuit court was within its discretion to credit this evidence and arrive at its final conclusion. As such, we find no merit to petitioner's first assignment of error.

Next, petitioner argues that the circuit court terminated petitioner's rights to the child as a "pretext" to facilitate long-term treatment for the child, which could not otherwise be completed in the time limits allowed for improvement periods. Petitioner's blanket statement that the circuit court terminated her rights solely to place this child in long-term treatment is unfounded by the record on appeal. As noted above, the evidence included witness testimony that petitioner failed to follow through with the rehabilitative services provided to her, and that evidence was sufficient to support termination of her parental and custodial rights in this matter. Finding no support for this argument in the record before us, we likewise find no reversible error.

Petitioner's third and final assignment of error is that the circuit court improperly relied upon "continued family drama," which she claims was an allusion to her many referrals to CPS (in which she accused the child's father of child sexual abuse), as a basis for terminating her parental and custodial rights to the child. In support of her claim, petitioner asserts that she merely attempted to protect the child by making those referrals to CPS. At the outset, we note that petitioner cites to no portion of the record on appeal where the circuit court relied upon her referrals to CPS as a basis for termination. To the contrary, the only discussion of the CPS referrals in the circuit court's final order is in the finding that petitioner's counsel argued that those referrals were made to protect the child. While the circuit court found that "broader family/drama [sic]" existed in this matter, it is clear that the circuit court contemplated more in its description of "broader family/drama [sic]" than petitioner's referrals to CPS. During the adjudicatory phase of these proceedings, petitioner stipulated to her hostile relationship with family members, which included an encounter with one family member at the child's school. The circuit court's finding as to "family drama" was not in error.

Further, it is well-established law in this Court's jurisprudence that "[a] judgment will not be reversed for any error in the record introduced by or invited by the party seeking reversal."

Syl. Pt. 4, *State v. Mann*, 205 W.Va. 303, 518 S.E.2d 60 (1999) (internal citations omitted). Based on petitioner's express stipulation to hostile relationships with her family and our review of the circuit court's final order, we find that reversal of the circuit court's order is not warranted under the circumstances of this case.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 31, 2015, order is hereby affirmed.

Affirmed.

**ISSUED**: **May 23, 2016**

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II