FILED
**November 5, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **H.M.**

No. **20-0577** (Wood County 16-JA-98)

**MEMORANDUM DECISION**

Petitioner foster parents M.B. ("foster father") and C.B. ("foster mother") (collectively "petitioners"), by counsel William B. Summers, appeal the July 7, 2020, order of the Circuit Court of Wood County granting them visitation with H.M. at the discretion of the child's paternal grandparents.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Caleb A. Seckman and Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Justin M. Raber, filed a response on behalf of the child also in support of the circuit court's order. Respondent grandparents J.T. and S.T. ("grandparents"), by counsel Ginny Conley, filed a response in support of the circuit court's order. On appeal, petitioners argue that the circuit court erred in failing to include language in its February 11, 2020, order indicating that it was a final, appealable order; not granting petitioners visitation with the child; and providing notice of the July 1, 2020, permanent placement review hearing by e-mail only.

After considering the parties' written and oral arguments, as well as the record on appeal and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

H.M. was placed with petitioners on July 22, 2016, when she was twenty-eight days old, after the DHHR initiated a child abuse and neglect proceeding against H.M.'s biological parents. The child remained with petitioners throughout the proceedings, which resulted in the termination of the father's parental rights on June 12, 2017, and termination of the mother's parental rights on January 16, 2018.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

In October of 2018, the grandparents filed a motion to intervene, which the circuit court granted. The grandparents also filed a motion seeking placement of the child with them and grandparent visitation. By order entered November 27, 2018, the circuit court granted the grandparents supervised visitation with the child, but deferred ruling on the placement issue, determining that an evidentiary hearing was needed. The circuit court held a hearing on the grandparents' request for placement in January of 2019. Both the DHHR and the guardian opposed the grandparents' motion, and after hearing evidence, the circuit court denied the motion for placement. The court performed an analysis under the grandparent preference statute, as set forth in West Virginia Code § 49-4-114, and found that although the grandparents were suitable and willing, the best interests of the child necessitated remaining with petitioners. The circuit court noted that the grandparents had waited until February of 2018, nearly eighteen months after the child's birth, to attempt to intervene in the proceedings or to seek placement, and that this "wait and see" approach had previously been disapproved by this Court.[2] *See In re K.E.*, 240 W. Va. 220, 227, 809 S.E.2d 531, 538 (2018). In contrast, the court found that petitioners cared for the child since she was twenty-eight days old; "dealt with the . . . ups and downs associated with" raising a child, such as "colic, nightmares, and various other dealings"; and the child had established a clear bond with petitioners and her foster siblings.

Following the entry of the January 29, 2019, order detailing the court's findings, the grandparents filed a motion for reconsideration of H.M.'s placement, which was joined in by the guardian ad litem. They also requested increased visitation with the child. The circuit court granted them increased visitation with the child and scheduled an evidentiary hearing on the motion to reconsider.

On May 10, 2019, the circuit court held an evidentiary hearing on the grandparents' motion for reconsideration. By order entered on February 11, 2020,[3] the court granted the motion and ordered that permanent placement of the child be with the grandparents. The circuit court explained that it had previously denied the grandparents placement of the child primarily due to the child's bond with petitioners and the length of time the child had resided with them. However, evidence presented at the evidentiary hearing, coupled with information received by the circuit court in regard to a related hearing wherein another of petitioners' foster children was removed from their care, led the court to reconsider its prior decision and grant permanent placement of the child with the grandparents. The court noted that "important information" was left undisclosed by petitioners and that "information has come to light that [petitioners] have significant financial and criminal issues that were not previously disclosed to the . . . [grandparents] and not disclosed or considered by the court prior to its [initial] decision." The financial and criminal information included: a felony criminal complaint filed against petitioner foster father in Wood County, West Virginia, for fraudulent schemes; criminal charges against petitioner foster father in Ritchie

---

[2]Significantly, the circuit court also found that the child's father actively withheld the contact information for his parents – the grandparents – from the DHHR, and was not forthcoming with the grandparents regarding the status of the proceedings.

[3]The circuit court indicated that it would issue a ruling on the motion at a later date; however, it is unclear from the appendix record why there was a nine-month delay in the court's ruling on this motion.

County, West Virginia; a tax lien in the amount of $84.00 in the City of Parkersburg, West Virginia; a civil judgment against petitioner foster father in the amount of $21,254.94 (plus interest at 6.99% per year) in Ritchie County; a civil judgment against petitioner foster father in the amount of $5,379.01 (plus interest at 4.5% per year) in Wood County; a magistrate complaint filed against petitioner foster father in Wood County with an Abstract of Judgment in the amount of $44,770.00 (plus interest at 4.5% per year); a civil judgment against petitioner foster father in Ritchie County in the amount of $24,000.00 (plus interest); and a magistrate complaint filed against petitioners in Wood County resulting in a default judgment in the amount of $1,196.00 (plus interest at 4.5% per year).

The circuit court commended petitioners for caring for the child but noted that it was unlikely permanency for the child could be achieved in their home. The court took judicial notice of the order from petitioners' related case, wherein a different Wood County circuit court judge found that petitioners' financial and moral issues rendered them incapable of adopting a different foster child under West Virginia Code § 48-22-701(d), which requires a court to find that the adopting parents are "of good moral character, and of respectable standing in the community, and are able to properly maintain and educate the child sought to be adopted . . . ." The court in that related case found that petitioner foster father failed to financially support one of his own biological children as shown by a child support arrearage balance of $46,136.34, despite his financial ability to make those payments. The court in that case stated that it was unable to conclude that a father who knowingly failed to pay child support when he had the financial ability to do so was of good moral character.[4]

Based on the foregoing, the circuit court concluded that petitioners would not meet the requirements for adoption as set forth in West Virginia Code § 48-22-701. The court found that the grandparents wanted permanent placement of the child; were fit and proper persons to be considered for permanent placement; had undergone a home study in their home state of North Carolina, which was approved; and had taken a strong interest in the child, which included regularly visiting with her. Accordingly, the circuit court determined that it was in the child's best interest to be placed with her grandparents where the permanency plan was for adoption. The court ordered that the child be immediately placed with the grandparents, as the visits between H.M. and the grandparents constituted a sufficient gradual transition period. The court also ordered that "visitation may occur by agreement of the parties or further order of the Court, as may be appropriate." Following the entry of this February 11, 2020, order, the court scheduled a permanent placement review hearing.

At a permanent placement review hearing held on March 11, 2020, petitioners moved the circuit court for visitation with the child. The guardian ad litem requested that the therapist make

---

[4]Petitioners appealed the related case to this Court in *In re B.A.*, 243 W. Va. 650, 849 S.E.2d 650 (2020). On appeal, we determined that petitioners' financial background was a relevant consideration in determining whether they could meet statutory prerequisites for adoption, but remanded the matter for consideration of the sibling preference set forth in West Virginia Code § 49-4-111(e), because the circuit court had failed to consider petitioners' adoption of B.A.'s older sibling. 243 W. Va. at 656-57, 849 S.E.2d at 656-57

a recommendation regarding any visitation.[5]  By order entered March 17, 2020, the court directed the DHHR to "obtain the therapist's records and send them to the therapist in North Carolina." The court suspended visitation between petitioners and the child at that time.

A second review hearing was held in July of 2020, in which neither petitioners nor their counsel appeared. By order entered on July 7, 2020, the circuit court ordered that visitation with petitioners be at the discretion of the grandparents. Petitioners appeal the July 7, 2020, order.

The Court applies the following standard of review to the issues raised by petitioners:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

First, petitioners allege that the circuit court erred in failing to include "final order language" in either the February 11, 2020, order granting permanent placement of the child to the grandparents, or the subsequent March 17, 2020, order.  In an argument that elevates semantics over substance, petitioners contend that the circuit court only made "findings" regarding placement of the child with the grandparents, but no "determination" that the child was to be adopted by the grandparents.  Petitioners contend that precise language such as "the Court FINDS permanency is in the best interests of the child, and the Court ORDERS the Department to work on achieving permanency for the child with . . . [the grandparents][,]" was necessary in order to make the circuit court's orders final and appealable.  Apart from summarily concluding that the circuit court's failure to include "final order language" constitutes reversible error, petitioners do not argue that they would have appealed the February 11, 2020, order had it included such language, or that they would have raised arguments regarding the permanent placement of the child with the grandparents.

---

[5]There is no information in regard to the therapist or the therapist's records in the appendix record.

In their argument, petitioners also focus primarily on the language contained in the circuit court's March 17, 2020, order, which was entered following a "permanent placement review hearing," not the February 11, 2020, order in which the circuit court decided the permanent placement for the child. Petitioners' failure to focus on the language in the February order is largely due to the fact that the language undermines their claim that the order was not final and appealable. In the February order, the circuit court clearly stated that "it has now become apparent to the court that it is unlikely that permanency can be achieved with . . . [petitioners] and that "it does not appear that . . . [petitioners] would meet the requirements of W. Va. Code § 48-22-701 for adoption." The circuit court then determined that "it would be in the best interest of the child to place her in her grandparents' home where the permanency plan would be adoption" and that the visits that had been occurring between the child and the grandparents "constitute an adequate transition period." The court ordered that the child "be placed with her paternal grandparents" and that there was "no need for further delay in transitioning to the child's placement to her paternal grandparents."

This Court has previously held that "[a] case is final only when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined." Syl. Pt. 3, in part, *James M.B. v. Carolyn M.*, 193 W. Va. 289, 456 S.E.2d 16 (1995). In this regard, it is undisputed that the language used by the circuit court in the February 11, 2020, order definitively ordered the permanent placement of the child to be with the grandparents, not the petitioners. This is demonstrated by the fact that this is exactly what occurred, because the placement of H.M. with petitioners was terminated and the child was transitioned from petitioners to the grandparents. The order also left no question in regard to the circuit court's findings and determination that petitioners would not meet the statutory requirements needed for adoption. Despite the consequences of this order – that H.M.'s placement with petitioners ended and permanent placement of the child was granted to the grandparents – petitioners failed to appeal the February 11, 2020, order. Because the February 11, 2020, order unequivocally constituted a final determination on the merits concerning the permanent placement of the child with the grandparents, petitioners' argument to the contrary is without merit.

Second, petitioners argue that the circuit court erred in failing to grant them visitation when they had cared for the child for the majority of her life. According to petitioners, the circuit court failed to consider the requisite factors when denying them visitation with the child. Petitioners aver that the child had a bond with them as evidenced by the fact that she had lived with them essentially since birth and referred to petitioner foster mother as "mommy." Petitioners argue that visitation was suspended without any determination on how it would affect the child and, as such, the circuit court committed reversible error.

We note that petitioners' argument is disingenuous, at best, because it wholly misrepresents the record. The circuit court did not deny petitioners visitation with the child. Indeed, the circuit court ordered that petitioners could enjoy visitation with the child at the grandparents' discretion.[6] Accordingly, we find no error.

---

[6]Given that the permanency plan is for the grandparents to adopt the child, the circuit court's decision to place visitation of the child with petitioners in the grandparents' discretion is consistent with this Court's recent decision in *In re Adoption of J.S. and K.S.*, 245 W. Va. 164, 858

Third, petitioners argue that the circuit court erred in providing notice of the July 1, 2020, permanent placement review hearing by e-mail alone. Petitioners contend that the sole e-mail sent to their counsel's work e-mail address did not afford "fair and complete" notice of the hearing. Petitioners state that no certified mail or other form of notification was ever given to them or their counsel, and that the e-mail notification was not reviewed by their counsel prior to July 1, 2020, all of which led to the hearing moving forward without them or their counsel. Petitioners contend that e-mail alone should not be considered a proper method of notice.

Rule 39(c) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, in part, sets forth that "[n]otice of the time and place of the permanent placement review conference shall be given to counsel of record, and all other persons entitled to notice and the right to be heard at least fifteen (15) days prior to the conference unless otherwise provided by court order." Further, pursuant to Rule 5(b) of the West Virginia Rules of Civil Procedure, which is applicable to abuse and neglect proceedings,

> [w]henever under these rules service is required or permitted to be made upon a party represented by an attorney, the service shall be made upon the attorney unless service upon the party is ordered by the court. Service upon the attorney or upon a party shall be made by delivering a copy to the attorney or party; or by mailing it to the attorney or party at the attorney's or party's last-known address or, if no address is known, by leaving it with the clerk of the court; or by facsimile transmission made to the attorney or party pursuant to the West Virginia Supreme Court of Appeals Rules for Filing and Service by Facsimile Transmission. Delivery of a copy within this rule means: handing it to the attorney or to the party; or leaving it at the attorney's or party's office with a clerk or other person in charge thereof; or, if the office is closed or the person to be served has no office, leaving it at the person's dwelling house or usual place of abode with some member of the person's family above the age of 16 years. Service by mail is complete upon mailing.

Under the specific facts and circumstances of the instant case we find no error, notwithstanding the fact that the service of the notice for the permanent placement review hearing did not comport with the foregoing rule. It is undisputed that petitioners' counsel received notice of the hearing via e-mail nearly forty days in advance of the hearing – ample time in which to open an email from the court. Further, petitioners do not argue that they were prejudiced, in any way, by their absence at the hearing, or that they were prevented from presenting any motions or evidence or from raising any issues they had hoped to raise. As a matter of fact, the order from this hearing reflects that no negative action was taken against petitioners; conversely, the circuit court

S.E.2d 214 (2021) ("Unless otherwise permitted by law, where a circuit court grants a petition for adoption of a child pursuant to the procedures set forth in West Virginia Code §§ 48-22-701 to -704 (2015), the court may not include any provision in the final order of adoption that would limit, restrict, or otherwise interfere with the adoptive parent's right to make decisions concerning the care, custody, and control of the child.").

6

ordered "visitation with . . . [petitioners] be in the discretion of . . . [the grandparents]." Finally, despite having been sent a certified copy of the circuit court's July 7, 2020, order in which the court noted the absence of petitioners and their counsel from the July 1 hearing, petitioners did nothing to bring to the circuit court's attention that the notice their counsel received for the hearing failed to comport with our rules and was the reason that neither petitioners nor their counsel appeared at the hearing. Indeed, although there was another permanent placement hearing on September 21, 2020, which petitioners did attend, they offered no argument or objections concerning the notice given for the July hearing that they did not attend. [7]

We have previously held that

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W. Va. 390, 686 S.E.2d 41 (2009). Given petitioners' counsel's receipt of the e-mailed notice nearly forty days in advance of the hearing, petitioners' failure to assert any prejudice resulting from their absence from the hearing, petitioners' failure to bring the alleged defect in the manner in which the notice was served to the circuit court's attention, and the fact that another permanent placement hearing occurred subsequent to the July 2020, hearing, in which petitioners and their counsel did appear but again failed to raise any issue with respect to the earlier alleged defect in notice, we cannot find that the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes were substantially disregarded or frustrated such that

---

[7]This Court has often held that a party must assert a right in the circuit court to preserve the issue for appellate review. *See State v. LaRock*, 196 W.Va. 294, 316, 470 S.E.2d 613, 635 (1996) ("'One of the most familiar procedural rubrics in the administration of justice is the rule that the failure of a litigant to assert a right in the trial court likely will result' in the imposition of a procedural bar to an appeal of that issue." (citation omitted)); *State v. Jessie*, 225 W.Va. 21, 27, 689 S.E.2d 21, 27 (2009) (stating that the "general rule is that nonjurisdictional questions not raised at the circuit court level will not be considered to the first time on appeal" (citation omitted)); Syl. Pt. 4, *State v. Mann*, 205 W.Va. 303, 518 S.E.2d 60 (1999) ("A judgment will not be reversed for any error in the record introduced by or invited by the party seeking reversal." (citations omitted)); *see also* W. Va. R. App. P. 10(c)(7) (requiring petitioner's briefs to contain an argument clearly exhibiting the points of fact and law presented and "appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal"). Petitioners fail to direct the Court's attention to any portion of the appendix record where an objection to the notice issue for the permanent status hearing was raised before the circuit court.

vacation of the order is warranted. Accordingly, we find that petitioners are entitled to no relief in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 7, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  November 5, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton